[No. B225429. Second Dist., Div. One. June 29, 2011.]

DAVID BLEAVINS, Plaintiff and Respondent, v.
JOHN A. DEMAREST et al., Defendants and Appellants.

## COUNSEL

Hanger, Steinberg, Shapiro & Ash, Jody Steinberg and Whitney L. Bost for Defendants and Appellants.

David Bleavins, in pro. per., for Plaintiff and Respondent.

## OPINION

**MÀLLANO, P. J.**—In a prior lawsuit, plaintiff sued his neighbors over an easement dispute involving a shared driveway. An insurance company provided the neighbors with a defense. Plaintiff then filed this action against the neighbors' attorneys, alleging that, in the prior action, the attorneys improperly represented the neighbors, made misrepresentations in the course of the litigation, engaged in frivolous litigation tactics, and failed to provide plaintiff with promised documents and information. The complaint contained seven causes of action.

The attorneys filed a special motion to strike, contending this action was a strategic lawsuit against public participation (SLAPP) (Code Civ. Proc., § 425.16; undesignated statutory sections are to that code). The trial court granted the motion as to one cause of action and denied it as to the rest. This appeal followed.

■ We conclude that all of plaintiff's causes of action arise out of written or oral statements made either before a judicial proceeding (see § 425.16, subd. (e)(1)) or in connection with an issue under consideration by a judicial body (see *id.*, subd. (e)(2)). Further, plaintiff is not reasonably likely to prevail on any cause of action. (See *id.*, subd. (b)(1)). Thus, the trial court should have granted the anti-SLAPP motion in its entirety. We therefore reverse the order and remand so the trial court may award attorney fees and costs to the attorneys. (See *id.*, subd. (c)(1).)

## I

## BACKGROUND

The allegations and evidence in this case are taken from the pleadings and the declarations submitted in the trial court with respect to the anti-SLAPP motion.

### A. *Complaint*

In a prior suit filed on February 3, 2009, David Bleavins sued Gary and Karen Dannenbaum for breach of an "easement agreement" (*Bleavins v.*

*Dannenbaum* (Super. Ct. L.A. County, 2010, No. SC101608) (*Bleavins I*)). Allstate Insurance Company (Allstate) provided the Dannenbaums with a defense under a reservation of rights. Attorney John A. Demarest and his law firm, Hanger, Steinberg, Shapiro & Ash (collectively the firm), represented the Dannenbaums. *Bleavins I* was dismissed the following year.

Meanwhile, on April 28, 2010, Bleavins, in propria persona, filed this action against the firm, alleging seven causes of action: (1) intentional violation of public policy; (2) negligent violation of public policy; (3) unfair business practices (intentional); (4) unfair business practices (negligent); (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) fraud. Allstate, which is not a party to this appeal, was also sued.

The first six causes of action—all but the fraud claim—alleged that "defendants"—the firm and Allstate—had agreed to provide the Dannenbaums with insurance coverage for intentional torts and that such an agreement violated public policy, insurance laws, and fair business practices. By providing the Dannenbaums with a defense, the firm and Allstate had "empowered and emboldened [the Dannenbaums] to continue to breach their easement agreement with [Bleavins] and to commit additional and continuing intentional torts against [him]."

The fraud claim alleged that, in *Bleavins I*, the firm had stated it "would represent [the Dannenbaums] in a professional, honorable, and honest manner" and "would act in good faith to settle and resolve disputes between [its] clients and [Bleavins]." The firm "only care[d] about protracting [the] litigation, abusing the legal system, filing frivolous and unmeritorious motions and objections, and billing co-defendant Allstate for as much and as long as possible." In addition, Attorney Demarest "personally promised [Bleavins] to provide [him with] documents, information, updates, and cooperation." On or about November 23, 2009, Bleavins learned that the firm "had no intention of keeping [its] word or being [an] honorable member[] of the legal profession." The firm's actions caused Bleavins "to lose a building permit entitlement."

## B. *Anti-SLAPP Motion*

On May 13, 2010, the firm filed an anti-SLAPP motion, contending this suit was based on communications made in connection with litigation, specifically, the *Bleavins I* action (see § 425.16, subd. (e)(1), (2)), and Bleavins was not likely to prevail on any of his claims (see *id.*, subd. (b)(1)).

The firm submitted two declarations establishing the following facts. *Bleavins I* concerned a dispute over a driveway easement that Bleavins and

the Dannenbaums shared. The original complaint in *Bleavins I* asserted causes for declaratory relief, injunctive relief, general negligence, and "intentional tort." Allstate retained the firm to represent the Dannenbaums. Demarest was assigned as trial counsel and was the attorney primarily responsible for the case. He prepared and filed a demurrer and a motion to strike portions of the complaint. The hearing was set for June 22, 2009.

Before the hearing, Bleavins filed a first amended complaint alleging purported causes of action for quiet title, declaratory relief, civil liability for extortion, conspiracy to commit extortion, perjury, suborning perjury, assault, battery, false imprisonment, "trespass: real property," "trespass: personal property," intentional infliction of emotional distress, and intentional interference with prospective business advantage. In response to the first amended complaint, Demarest filed another demurrer and motion to strike portions of the complaint. The trial court sustained the demurrer in part and denied the motion to strike. An answer was filed.

All of Demarest's communications with Bleavins were made through Bleavins's attorney of record, and some occurred in Bleavins's presence. Demarest took Bleavins's deposition, at which his attorney was present. In *Bleavins I*, the trial court did not impose any sanctions on the firm.

The firm had never issued an insurance policy to an individual or entity, made an insurance coverage decision related to the Dannenbaums, or represented an individual or entity with respect to a coverage issue in *Bleavins I*.

Bleavins filed opposition to the anti-SLAPP motion. He stated he had sued the firm because it was "knowingly taking money from Allstate for representing the Dannenbaums in [*Bleavins I*]." Referring to Demarest and the firm together, Bleavins explained: "They are being sued because they know that their representation of the Dannenbaums violates public policy and that in their representation [of] the Dannenbaums they have intentionally lied to me, have made intentional misrepresentations and have defrauded me, which can be proven *by the way they practice law*." (Italics added.)

The anti-SLAPP motion was heard on June 15, 2010. The trial court granted the motion with respect to the fraud claim only. The court stated that the other claims did not fall within the scope of the anti-SLAPP statute because they were premised on an agreement between Allstate and the firm to provide the Dannenbaums with a defense in *Bleavins I*, thereby permitting the Dannenbaums to have "peace of mind" in continuing to commit intentional torts. The trial court also denied the firm's request for attorney fees in bringing the motion. An order was entered accordingly. The firm appealed.

## II

## DISCUSSION

Our review of an order granting or denying an anti-SLAPP motion is de novo. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

On appeal, the firm contends that all of Bleavins's causes of action arise out of activity protected by the anti-SLAPP statute and that Bleavins is not reasonably likely to prevail on any of them. Bleavins argues otherwise. We agree with the firm.

### A. *Anti-SLAPP Law*

■ " 'The Legislature enacted the anti-SLAPP statute to protect defendants . . . from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.' " (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1052 [61 Cal.Rptr.3d 434].)

■ The statute provides that "[a] cause of action against a person *arising from any act* of that person *in furtherance of* the person's right of *petition* or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.) The statute is to "be broadly construed to encourage continued participation in free speech and petition activities." (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22 [45 Cal.Rptr.3d 633]; accord, § 425.16, subd. (a).)

■ "[T]he statutory phrase 'cause of action . . . *arising from*' means simply that the *defendant's act* underlying the plaintiff's cause of action must *itself* have been *an act in furtherance of the right of petition or free speech*. . . . In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. . . . 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], some italics added, citations omitted; accord, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734 [3 Cal.Rptr.3d 636, 74 P.3d 737] ["arising from" encompasses any act "based on" speech or petitioning

activity]; *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66] [same]; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 72 [24 Cal.Rptr.3d 72] [same].)

Section 425.16, subdivision (e) states: "As used in this section, '*act in furtherance of* a person's *right of petition* or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any *written or oral statement or writing* made *before a* legislative, executive, or *judicial proceeding*, or any other official proceeding authorized by law, (2) any *written or oral statement or writing* made in connection with *an issue under consideration or review by a* legislative, executive, or *judicial body*, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■ "Clauses (3) and (4) of section 425.16, subdivision (e), concerning statements made in public fora and 'other conduct' implicating speech or petition rights, include an express 'issue of public interest' limitation; clauses (1) and (2), concerning statements made before or in connection with issues under review by official proceedings, contain no such limitation." (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1117.) Thus, if a communication falls within either of the "official proceeding" clauses, the anti-SLAPP statute applies without a separate showing that a public issue or an issue of public interest is present. (See *Briggs*, at pp. 1117–1121, 1123; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 196 [10 Cal.Rptr.3d 154].) In drafting the statute, the Legislature concluded that authorized official proceedings necessarily involve a public issue or an issue of public interest. (*Briggs*, at p. 1117.)

■ "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights." ' . . . 'Considering the purpose of the [anti-SLAPP] provision, . . . the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92–93 [124 Cal.Rptr.2d 530, 52 P.3d 703], citation omitted.)

■ In ruling on an anti-SLAPP motion, the trial court "engage[s] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) "The term 'probability [of prevailing]' is synonymous with 'reasonable probability.' " (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 238 [118 Cal.Rptr.2d 313].)

Put another way, "[t]he party making a special motion to strike must make a prima facie showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity. . . . Once the defendant makes a prima facie showing, 'the burden shifts to the plaintiff to . . . "make a prima facie showing of *facts* which would, if proved at trial, support a judgment in plaintiff's favor." ' " (*Rezec v. Sony Pictures Entertainment, Inc.* (2004) 116 Cal.App.4th 135, 139 [10 Cal.Rptr.3d 333], citations omitted; accord, *Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315–316 [86 Cal.Rptr.3d 288, 196 P.3d 1094]; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108 [64 Cal.Rptr.3d 467].)

B. *Protected Activity*

As to the first step of the analysis, we conclude "defendant's act[s] underlying the plaintiff's cause[s] of action . . . [were] act[s] in furtherance of the right of petition . . . ." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78, italics added.) In his respondent's brief, Bleavins says: "If [the firm] *had told Allstate Insurance* that [it] would not represent Gary and Karen Dannenbaum in an action which David Bleavins had brought against the Dannenbaums for intentional torts and easement issues, David Bleavins would never ha[ve] sued the Attorney Defendants." (Italics added.) Apparently, Bleavins takes issue with having the Dannenbaums' attorney fees paid by an insurance company.

A fair reading of the complaint indicates that the principal "wrong" underlying the entire lawsuit is the Dannenbaums' representation by counsel at Allstate's expense. To the extent the first six causes of action are based on

providing insurance coverage for intentional torts, the firm established that it was not in the business of insurance, had not issued a policy to anyone, and had not rendered an opinion on coverage in *Bleavins I.* The determination of the insurability of the Dannenbaums' alleged intentional misconduct was not the firm's responsibility. Allstate retained the firm to serve as the Dannenbaums' *defense* counsel; the firm was not Allstate's *coverage* counsel. Also, Bleavins sought to impose liability on the firm based on "the way [it] practice[s] law."

Yet, depriving the Dannenbaums of a defense by Allstate *or* permitting Bleavins to maintain a claim for damages based on the way the firm practices law would " ' "interfere with and burden the . . . exercise of [the Dannenbaums'] right[ to petition]." ' " (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 93.) A claim against the firm arising from either its retention by an insurer *or* its approach to litigation would necessarily be based on counsel's written and oral statements "made before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review by . . . . judicial body" (*id.,* subd. (e)(2)). Only through such statements would the firm's retention *or* litigation strategy manifest itself. Consequently, all of Bleavins's causes of action fall within the scope of the anti-SLAPP statute. (See *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1414–1420 [103 Cal.Rptr.2d 174]; *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 904–908 & fn. 8 [90 Cal.Rptr.3d 218]; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 958–964 [106 Cal.Rptr.3d 290]; see also *Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at pp. 732–735.)

## C. *Probability of Prevailing*

With respect to the second step in the anti-SLAPP analysis—Bleavins's likelihood of prevailing on his causes of action—we conclude he has no chance of success for four reasons.

First, Bleavins lacks standing to assert any claim concerning the contractual relationship between Allstate and the Dannenbaums, including whether the Dannenbaums were entitled to a defense, because he is not a party to the insurance policy. (See *Seretti v. Superior Nat. Ins. Co.* (1999) 71 Cal.App.4th 920, 930 [84 Cal.Rptr.2d 315]; *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034 [244 Cal.Rptr. 249]; *St. Paul Fire & Marine Ins. Co. v. Continental Ins. Co.* (D.Md., May 10, 1993, No. CIV. A. HAR 88-3487) 1993 WL 165681, p. *11.) " ' "Someone who is not a party to [a] contract has no standing to [challenge the performance of] the contract or to recover extra-contract damages for wrongful [payment] of benefits to the contracting party." ' " (*Republic Indemnity Co. v. Schofield* (1996) 47 Cal.App.4th 220, 227 [54 Cal.Rptr.2d 637].) Bleavins therefore has

no standing to challenge Allstate's payments to the firm or the firm's representation of the Dannenbaums.

Second, regardless of the labels given to the causes of action, the entire complaint rests on alleged duties of care owed by *defense counsel* to the *plaintiff,* that is, by trial counsel to the *opposing* litigant. But Bleavins cites no authority to support such a duty entitling him to damages. (See *Schoendorf v. U.D. Registry, Inc., supra,* 97 Cal.App.4th at pp. 237–238 [party's failure to support contention with authority permits appellate court to disregard contention].)

■ For example, assuming Allstate erroneously decided that the Dannenbaums were entitled to a defense, it does not follow that the *firm* breached a duty to *Bleavins* by accepting Allstate's offer to serve as defense counsel in the prior suit. The duties arising under a liability policy are owed to the insured (the Dannenbaums), not the injured third party (Bleavins). (See *Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 205 [75 Cal.Rptr.3d 481]; *Shaolian v. Safeco Ins. Co.* (1999) 71 Cal.App.4th 268, 271 [83 Cal.Rptr.2d 702].) And contrary to the trial court's reason for denying the firm's anti-SLAPP motion, "[a]n agreement to *defend* an insured ' "upon mere accusation of a wilful tort does not encourage such wilful conduct." ' " (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 508 [78 Cal.Rptr.2d 142].)

Third, assuming the firm made "misrepresentations" to Bleavins in the prior action, "abused" the legal system, filed "frivolous" motions, and violated its discovery obligations, he may not recover damages in a civil suit for that conduct. His remedy, if any, was monetary sanctions or some other form of relief in *that* action. (See, e.g., §§ 128.7, 2023.030.)

Last, without any supporting factual allegations, the complaint's conclusory references to "misrepresentations," "abusive" conduct, "frivolous" motions, broken promises to "cooperate," and fraudulent statements to provide "information" and "documents" are insufficient to state a cause of action regardless of the legal relationship between the parties or, more precisely here, lack thereof. (See *Dowling v. Zimmerman, supra,* 85 Cal.App.4th at pp. 1420–1422.)

In sum, all of Bleavins's causes of action are within the ambit of the anti-SLAPP statute, and he would not prevail on any of them. The trial court therefore erred by denying the anti-SLAPP motion in part and by failing to award the firm its attorney fees and costs as the prevailing party. (See § 425.16, subd. (c)(1).) Any request for appellate attorney fees should be

presented in the first instance to the trial court on remand. (See Cal. Rules of Court, rule 3.1702(a), (c).)[1]

## III

### DISPOSITION

The order is affirmed to the extent it granted the special motion to strike as to the fraud cause of action and is reversed to the extent it denied the motion as to the remaining causes of action. On remand, the trial court shall enter a new order granting the motion in its entirety and shall award attorney fees and costs to the prevailing parties. (See Code Civ. Proc., § 425.16, subd. (c)(1).) Appellants are entitled to costs on appeal.

Chaney, J., and Johnson, J., concurred.

---

[1] It appears the firm was represented in the trial court by other counsel. On appeal, the firm has represented itself. The firm is not entitled to attorney fees for work it performed while self-represented. (See *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259].)