Filed 10/2/19; Certified for Publication 10/30/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TAE SEOG LEE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JONG YUN KIM,<br><br>    Defendant and Respondent. | B287923<br><br>(Los Angeles County<br>Super. Ct. No. BC673852) |
| GRIP SMART PRINTING, INC.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONG YUN KIM,<br><br>    Defendant and Appellant. | B289837<br><br>(Los Angeles County<br>Super. Ct. No. BC692010) |

APPEALS from orders of the Superior Court of Los Angeles County, Dalila Corral Lyons and Richard E. Rico, Judges. Affirmed.

Employment Rights Attorneys and Richard D. Schramm for Plaintiff and Appellant Tae Seog Lee and Plaintiff and Respondent Grip Smart Printing, Inc.

Lim Law Group and Preston H. Lim for Defendant, Appellant and Respondent Jong Yun Kim.

_____

## INTRODUCTION

These consolidated appeals arise out of two separate orders under the anti-SLAPP statute addressing special motions to strike malicious prosecution claims.[1]  Our chronicle begins when attorney Jong Jun Kim commenced a lawsuit against businessman Tag Seog Lee in federal court for alleged violations of the Americans with Disabilities Act (ADA; 42 U.S.C. § 12101 et seq.) and the Unruh Civil Rights Act (Unruh Act; Civ. Code, § 51 et seq.).  Kim alleged his client, who used a wheelchair for mobility, was denied access to Lee's business Grip Smart Printing, Inc. (Grip Smart) because the adjacent parking lot did not have a handicapped accessible spot.

_____

[1] "SLAPP stands for 'Strategic Lawsuit Against Public Participation.' "  (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 835, fn. 1.)  For clarity, we refer hereafter to an "anti-SLAPP" motion as a "special motion to strike"—the language used in the statute (Code Civ. Proc., § 425.16, subd. (b)(1)).  While the actions below were pursued separately, we consolidated the appeals as they share common facts and related parties.

2

After the complaint was filed, Lee's attorney provided information suggesting the lawsuit was meritless because Grip Smart was a corporate tenant on a commercial lease, and the landlord (and not Grip Smart or any other tenant) controlled the parking lot. Lee's attorney followed up shortly thereafter by providing a copy of the lease that verified his representations. Kim then voluntarily dropped the claims against Lee in favor of pursuing Grip Smart as well as its landlord. The federal district court eventually entered summary judgment in Grip Smart's favor, finding the alleged injury to Kim's client was not traceable to Grip Smart's conduct because, as a tenant, Grip Smart had no control over the parking lot. The landlord settled for a modest $3,000 payment without any agreement to remedy the alleged accessibility issues.

Lee thereafter sued Kim for malicious prosecution. Kim responded with a special motion to strike pursuant to Code of Civil Procedure section 425.16.[2] The trial court (the Honorable Dalila Corral Lyons) granted Kim's motion, finding that Kim's filing of the underlying lawsuit was protected conduct, and Lee had failed to establish a probability of prevailing on his malicious prosecution claim. After this ruling, Grip Smart filed a separate action against Kim for malicious prosecution, which was assigned to a different judicial officer (the Honorable Richard E. Rico). Kim again filed a special motion to strike. This time, the trial court denied the motion, determining that Grip Smart had established a probability of prevailing on its malicious prosecution claim.

---

[2] All unspecified statutory references are to the Code of Civil Procedure.

3

Lee now appeals the grant of Kim's special motion to strike Lee's claim. Kim appeals the denial of his special motion to strike Grip Smart's claim. Finding no reversible error in either ruling, we affirm.

## BACKGROUND

### A.     Grip Smart's Business Premises

In 2008, Lee and his wife purchased an existing printing business called "Smart Printing." They incorporated the business as Grip Smart in 2009. At the time, the business was one of 12 tenants in a commercial building owned by Yong O. Hwang (Hwang) and his company, Yongo America, Inc. (Yongo). Yongo and Hwang also owned the building's parking lot. Lee entered into a series of oral and written leases with Yongo for the shop premises. Lee and his wife have never had an ownership interest in Yongo, the building, or the parking lot.

The leases define "common areas" as the "parking lots, sidewalks, driveways and other areas used in common by the Tenants of the Shopping Center." Lee alleged that, throughout his tenancy, Yongo never gave him permission, either orally or in writing, to make changes or additions to any of the common areas. The leases gave Yongo the exclusive authority to "supervise and administer" the common areas, including the parking lot, and to charge the tenants for associated costs.

Yongo reserved the right to make changes to the "entrances, exits, traffic lanes and the boundaries and locations of such parking area or areas," including "the right to designate up to twenty-five percent (25%) of such parking area for the exclusive use of any . . . future tenant or tenants." Lee alleged that, as a tenant, he never had the right to control the parking lot.

4

Yongo was further responsible for causing the "common and parking areas" "to be graded, surfaced, marked and landscaped," and for keeping these areas "in a neat, clean[,] orderly" and repaired condition. Yongo reserved the right to determine whether anyone other than customers of the building were permitted to park their vehicles in the parking lot. The building's tenants, including Lee, agreed to comply with "rules, regulations and charges for parking" as established by Yongo.

**B.     The Underlying Action**

On September 18, 2016, Kim filed a complaint in federal court on behalf of Patricia Sue Williams against Taesik Yoon, doing business as "Smart Printing." The lawsuit (the Underlying Action) sought damages, injunctive relief, and attorneys' fees for violations of the ADA and the Unruh Act.[3] Williams is a paraplegic who uses a wheelchair for mobility. On behalf of Williams, Kim alleged Yoon was the owner of Smart Printing. Kim alleged Williams attempted to patronize the business in September 2016 but was unable to do so because the parking lot lacked an accessible parking space. Kim alleged that, on information and belief, a fully compliant parking space for persons with disabilities once existed in the lot, but Yoon failed to maintain the space and allowed the paint markings for the access aisle to fade beyond visibility. The complaint alleged the inaccessible parking lot denied Williams "full and equal access" to the printing business. Despite the fact that Williams did not enter the business, Kim alleged Williams "belie[ved]" there were additional "barriers" to access at the property and would amend

---

[3] Although it is not clear from the record, it appears Yoon may have previously owned the printing business.

the complaint once Williams was able to access Smart Printing's premises and conduct an inspection.

Kim filed an amended complaint in October 2016, adding Lee as a defendant. The amended pleading was substantially similar to the original complaint, but alleged Yoon and Lee were both doing business as Smart Printing.

On November 2, 2016, counsel for Lee and Grip Smart sent a letter to Kim advising that Grip Smart had no control over the parking lot and the claims in the Underlying Action were meritless. Counsel advised Kim that Yongo owned the building and parking lot where Williams allegedly encountered her disability access issues, and offered to provide Kim with the lease agreement applicable to the property. Kim declined to amend the complaint to name Yongo and instead demanded payment from Grip Smart.

On November 4, 2016, counsel sent another letter to Kim advising Kim of the following: (1) Grip Smart had no custody or control over the property giving rise to Williams's claims; (2) Kim needed to sue Yongo, the actual owner of the parking lot; (3) Grip Smart was not liable to Williams simply by virtue of its tenancy in the building next to the parking lot; (4) federal law excluded tenants from disability access liability in cases like Williams's; (5) Kim's refusal to name the property owner was evidence of his malicious intent to pursue the lawsuit solely to exact a monetary settlement; and (6) photographs of the parking lot at issue showed properly marked handicap parking, evidencing the lack of merit to the claims. Counsel also sent Kim a copy of Grip Smart's

lease.[4]  Counsel asked Kim to dismiss Lee from the lawsuit and warned that his clients would seek sanctions under rule 11 of the Federal Rules of Civil Procedure if Kim continued to pursue claims against them.

Pursuant to a stipulation signed by Lee, in January 2017 Kim again amended the complaint in the Underlying Action to add Grip Smart and Yongo as defendants.  The second amended complaint did not include Yoon and Lee as defendants, and the stipulation stated that Williams would seek to dismiss Yoon and Lee without prejudice.[5]  The second amended complaint identified Grip Smart as the operator of the printing business and Yongo as the owner of the property at which the business was located.

On February 21, 2017, counsel for Lee and Grip Smart again wrote to Kim to request that Williams dismiss her ADA and Unruh Act claims.  Counsel's letter reiterated the position that Williams lacked standing to sue Grip Smart because, as evidenced by the lease agreements, Grip Smart did not control the parking lot.

---

[4] Although counsel's transmittal of the lease is not part of the record and it is unclear whether he included the lease with his November 4, 2016 letter to Kim or sent it separately, Kim admits that "[o]n or around November 4, 2016, [he] received a copy of the lease from [counsel], indicating that the tenant was in fact [Grip Smart], rather than Tae Seog Lee."

[5] The record does not contain the federal court's ruling on the stipulation, nor does it reflect any attempts by Williams to dismiss Yoon or Lee.  We note Grip Smart represented in its motion to dismiss, discussed below, that Williams dismissed Yoon and Lee at the time she filed her second amended complaint.

7

When Kim failed to dismiss Grip Smart, counsel for Grip Smart moved for judgment on the pleadings pursuant to the Federal Rules of Civil Procedure, rule 12(c) or, in the alternative, for summary judgment under the Federal Rules of Civil Procedure, rule 56. The federal court considered the motion as one for summary judgment and, after considering extrinsic materials submitted by the parties, granted summary judgment in Grip Smart's favor. The federal court found uncontroverted evidence demonstrated Grip Smart did not own or control the parking lot where Williams alleged she suffered injury. It held that "because Williams' injury is not traceable to Grip Smart's actions, she lacks standing to bring disability discrimination claims against Grip Smart based on the parking lot injuries." (Fn. omitted.) On May 19, 2017, the federal court entered judgment in favor of Grip Smart. Williams settled her claims against Yongo for a payment of $3,000 and a mutual release.

## C. The Malicious Prosecution Actions

### 1. *Lee v. Kim*

#### (a) *The Complaint*

A few months after entry of judgment in the Underlying Action, Lee filed a complaint against Kim for malicious prosecution. Lee alleged Kim filed the Underlying Action without investigating who owned the parking lot, then asserted claims against Lee's business in the second amended complaint after having been advised Yongo owned, and was in control of, the parking lot. Lee alleged Kim continued to prosecute claims against Grip Smart after learning Grip Smart had no control over the parking lot, and after admitting in each iteration of the complaint that Williams observed no accessibility violations inside Grip Smart's facility. Lee alleged the ownership of the

8

relevant land, parking lot, and buildings was easily discoverable by a search of the records of the Los Angeles County Recorder's Office, yet Kim never conducted this simple research.

Lee also alleged that the settlement agreement with Yongo did not address any correction of the disability access issues in the parking lot, but rather provided for only monetary compensation. As a further indication of improper purpose in filing and maintaining the Underlying Action, Lee alleged Kim and Williams filed 46 separate disability access lawsuits in federal court between March 30 and August 7, 2016, 34 of which settled. Lee alleged on information and belief that "very few or none" of the settled cases included "resolution of the disability access issues via inspections by a Certified Access Specialist, repairs to illegal parking areas, or establishment of accessible parking areas." Instead, Lee alleged, the lawsuits were filed solely to extract monetary settlements, "the lion's share" of which would be retained by Kim, not Williams.

(b) *The Special Motion to Strike*

Kim responded by filing a special motion to strike, arguing Lee's malicious prosecution complaint arose from Kim's protected activity of representing Williams in the Underlying Action and petitioning on her behalf. Kim argued Lee had no probability of prevailing on his malicious prosecution claim because Lee did not receive a favorable determination on the merits of the Underlying Action, and the lawsuit was brought with probable cause and without malice. Specifically, Kim contended his voluntary dismissal of Lee from the Underlying Action—which occurred when Kim dismissed Lee in favor of adding Grip Smart as a defendant—was not a favorable determination on the merits because including Lee had "merely [been] a technical error."

9

Kim further argued he had probable cause to file and maintain the Underlying Action because the lease with Yongo was "insufficient" to determine who was liable and, even after a settlement was reached, Yongo continued to assert Grip Smart should be responsible for 50 percent of the liability. With respect to the element of malice, Kim contended his only motive for filing the Underlying Action was to seek compensation for Williams, and there was no evidence he had any improper purpose for pursuing Lee.

In his opposition, Lee argued that he had prevailed on the merits, as Kim had initially sought individual liability against the owner of the business, and ultimately dismissed Lee. Lee further argued that Kim lacked probable cause to pursue Lee, as Kim knew as early as November 2016 that neither Lee nor his business owned the building or parking lot where Williams allegedly encountered access barriers. Finally, Lee argued Kim's pursuit of individual liability and demands for monetary settlement supported a finding of malice.

(c)     *Court Ruling on the Special Motion to Strike*

On November 6, 2017, Judge Lyons granted Kim's special motion to strike. The court determined the complaint arose from protected activity, but that Lee failed to establish a probability of prevailing on his complaint because he could not demonstrate the Underlying Action was terminated in his favor on the merits: "[Kim] chose not to proceed [against Lee] because of a technical defect—namely that [Kim] had asserted the action against [Lee] in his individual capacity, but now sought to sue [Lee's] corporation as the proper party. This did not reflect on the substantive merits." Since it found Lee could not establish one of the prima facie elements of his malicious prosecution claim, the

10

trial court did not reach the remaining elements of probable cause or malice. Pursuant to section 425.16, subdivision (c), the court awarded Kim his attorney fees and costs incurred on the special motion to strike in the amount of $18,172.50. Lee timely appealed.[6]

### 2. *Grip Smart v. Kim*

#### (a) *The Complaint*

On January 29, 2018, after Lee's complaint was struck, Grip Smart filed a separate complaint against Kim for malicious prosecution. Grip Smart's complaint was nearly identical to Lee's complaint, but added as additional evidence of Kim's improper purpose an allegation that, following entry of judgment against his client, Kim entered Grip Smart's facility and demanded Lee and his wife pay him $18,000 to settle "all" remaining legal

---

[6] "[A] notice of appeal must be filed on or before the earliest of: (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or (C) 180 days after entry of judgment." (Cal. Rules of Court, rule 8.104(a)(1) (rule 8.104).) The record indicates no document complaint with rule 8.104(a)(1)(A) or (a)(1)(B) was served on Lee, and he therefore had 180 days from the date of the judgment or order to file its notice of appeal. (Rule 8.104(a)(1)(C).) The trial court issued its order granting Kim's motion to strike Lee's complaint on November 6, 2017. Lee's notice of appeal was filed on January 31, 2018.

11

issues. Kim knew Grip Smart was still represented by counsel at that time.

(b) *The Special Motion to Strike*

As he had with regard to Lee's complaint, Kim responded by filing a special motion to strike. Kim made the same arguments he made in the motion to strike Lee's claim regarding probable cause and malice, but proffered a different theory as to why Grip Smart did not obtain a favorable termination on the merits in the Underlying Action. Kim asserted that the federal court's dismissal of Williams's claims against Grip Smart for lack of standing under article III of the Constitution was not " 'on the merits' " of the ADA and Unruh Act claims asserted in the Underlying Action.

In opposition, Grip Smart argued it had prevailed on the merits in the Underlying Action through the grant of summary judgment, Kim lacked probable cause to pursue Grip Smart because Kim knew by November 2016 that Grip Smart did not own the building or parking lot, and Kim's continued pursuit of monetary settlement without any legal basis supported a finding of malice. Grip Smart provided a declaration from Grip Smart's counsel containing evidence in support of its arguments, and identifying pertinent pleadings and orders in the Underlying Action attached to Kim's request for judicial notice.

(c) *Court Ruling on the Special Motion to Strike*

On April 17, 2018, Judge Rico denied Kim's special motion to strike. The court found the malicious prosecution claim arose from protected activity, but that Grip Smart had made the requisite showing that it would probably prevail. The court rejected Kim's argument that the dismissal of the Underlying Action for lack of article III standing was purely jurisdictional,

12

noting "the summary judgment ruling makes clear that this was not a mere technical dismissal for lack of jurisdiction. Having considered the evidence, the [federal] court made the determination that [Grip Smart] did not 'own or control the parking lot where Williams alleged she encountered barriers to her disability . . . .' " Further, the trial court determined the lease "ma[de] no . . . provision" for Grip Smart's ability to operate or control the parking lot, so "there was no basis for believing that [Grip Smart] was in any way responsible for the alleged ADA violation" and the lawsuit lacked probable cause.

The trial court was particularly troubled by Kim's continued prosecution of the Underlying Action against Grip Smart even after he was made aware of the terms of the lease. In response to Kim's contention that Grip Smart provided him with no evidence other than the lease to show a lack of ownership or control, and did not provide " 'sworn statements or declarations' " regarding the control issue until the motion for summary judgment, the trial court noted, "[i]t was not [Grip Smart's counsel's] obligation to prove a negative, it was Kim's obligation to establish probable cause to continue the law suit for which apparently none existed."

Lastly, the court found that Kim's prosecution of the Underlying Action despite the lack of probable cause, along with the proffered evidence Kim demanded money from Grip Smart after learning the suit lacked merit, were sufficient to support a conclusion the matter was pursued with malice. Kim timely appealed.[7]

_____

[7] Grip Smart asserts Kim's notice of appeal was premature, as it was filed after entry of the minute order for the hearing granting the special motion to strike, but before written notice

13

## DISCUSSION

### A.    Applicable Law and Standard of Review

" ' "The Legislature enacted the anti-SLAPP statute to protect defendants . . . from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances." ' " (*Bleavins v. Demarest* (2011) 196 Cal.App.4th 1533, 1539.)  The statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)  "The statute is to 'be broadly construed to encourage continued participation in free speech and petition activities.' " (*Bleavins*, *supra*, at p. 1539; § 425.16, subd. (a).)

"In evaluating an anti-SLAPP motion, the court conducts a potentially two-step inquiry.  [Citation.]  First, the court must decide whether the defendant has made a threshold showing that the plaintiff's claim *arises from* protected activity.  [Citation.]  To

---

was given of the order or judgment entered.  Given that the court adopted its written tentative order at the conclusion of the hearing, so there is no doubt regarding the ruling to be reviewed, and Grip Smart identifies no prejudice from the premature notice of appeal, "we do not believe any purpose would be served by penalizing [Kim] for taking a premature appeal" and exercise our discretion in favor of hearing the matter on the merits.  (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69.)

14

meet its burden under the first prong of the anti-SLAPP test, the defendant must demonstrate that its act underlying the plaintiff's claim fits one of the categories spelled out in subdivision (e) of the anti-SLAPP statute." (*Bonni v. St. Joseph Health System* (2017) 13 Cal.App.5th 851, 859, disapproved on another ground in *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 892.)

"Second—*if* the defendant meets its burden of showing all or part of its activity was protected—then the court proceeds to the next step of the inquiry.  At this stage—applying the second prong of the anti-SLAPP test—the court asks 'whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Bonni v. St. Joseph Health System*, *supra*, 13 Cal.App.5th at pp. 859-860.)  The Supreme Court has "described this second step as a 'summary-judgment-like procedure.' [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  '[C]laims with the requisite minimal merit may proceed.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385, fn. omitted.)

An appeal from an order granting or denying a special motion to strike is reviewed de novo.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)  In considering the pleadings and supporting and opposing declarations, we do not make credibility determinations or compare the weight of the evidence.  Instead, we accept the opposing party's evidence as

true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Ibid.*)

## B. Both Malicious Prosecution Claims Involved Protected Conduct

The first step of the anti-SLAPP inquiry, whether Kim made a threshold showing that the claims of Lee and Grip Smart for malicious prosecution arose from protected activity, is not disputed here. The anti-SLAPP statute defines an " 'act in furtherance of a person's right of petition or free speech' " to include "any written or oral statement or writing made before a . . . judicial proceeding . . . ." (§ 425.16, subd. (e)(1).) The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity, because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735.) Accordingly, our inquiry shifts to whether Lee and Grip Smart satisfied their respective burdens to demonstrate a probability of prevailing on the merits of their claims for malicious prosecution. (*Id.* at p. 733; accord, § 425.16, subd. (b)(1).)

## C. Lee Did Not Demonstrate a Probability of Prevailing on the Merits

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 292.)

16

The claims against Lee terminated when Kim, on behalf of his client, voluntarily filed a second amended complaint that dropped Lee as a defendant.[8] "In order for a termination of a lawsuit to be considered favorable with regard to a malicious prosecution claim, the termination must reflect on the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056.)  While Kim acknowledges a voluntary dismissal is presumed to be a favorable termination on the merits (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1400), he argues Lee's dismissal was purely for technical reasons that did not reflect on the merits of the Underlying Action.  Specifically, Kim asserts that he dropped Lee solely to "replace him with Grip Smart, who was the proper tenant and the real party-in-interest."

Kim initially filed suit seeking to hold Lee individually liable.  Kim dismissed Lee from the Underlying Action after being provided information showing Lee was not a proper defendant because he was not individually liable.  It is plausible to conclude, as the trial court did, that Kim dismissed Lee because he believed liability still existed and rather than pursuing alter ego or other claims to pierce the corporate veil and hold Lee individually liable he decided instead to pursue Grip Smart.  It is also plausible to conclude, however, that Kim dismissed Lee because the information Lee's counsel provided

---

[8] " '[I]t has long been the rule that an amended complaint that omits defendants named in the original complaint operates as a dismissal . . . as to them.' " (*Dye v. Caterpillar, Inc.* (2011) 195 Cal.App.4th 1366, 1382, fn. 11.)

17

showed Lee was not liable under any circumstances. While the trial court's inference that Lee's dismissal did not reflect the substantive merits was plausible, in the "summary-judgment-like procedure" of a special motion to strike we do not weigh evidence or resolve conflicting factual claims. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) We further must draw all reasonable inferences from the evidence in favor of Lee as the plaintiff. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist*. (2003) 106 Cal.App.4th 1219, 1238-1239.) Accordingly, Lee made the required prima facie showing that the Underlying Action terminated in his favor on the merits.

While we part ways with the trial court on whether there was prima facie evidence the Underlying Action was terminated favorably on the merits, we agree with the end result of striking Lee's claim. To demonstrate a probability of prevailing on the second prong of the anti-SLAPP analysis, Lee was required to produce admissible evidence from which a trier of fact could find in his favor, as to *every element* Lee needed to prove at trial to establish malicious prosecution. (§ 426.16, subd. (b)(1); *Jarrow Formulas, Inc. v. La Marche*, *supra*, 31 Cal.4th at p. 739.)

Lee takes the unfounded position that because the trial court did not discuss either the lack of probable cause or malice elements, he is likewise excused from addressing them. Although we examine the trial court's decision independently, the scope of our review is limited to those issues that have been adequately raised and supported in the appellant's brief. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) Lee's burden on appeal "includes the obligation to present *argument and legal authority* on *each point* raised. This requires more than simply stating a bare assertion that the judgment, or part of it, is erroneous and

18

leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment . . . ." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2018) ¶ 8:17.1, p. 8-6.) " 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].' " (*In re A.C.* (2017) 13 Cal.App.5th 661, 672; accord, *Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1.)

Lee's briefing fails to address Kim's alleged lack of probable cause or malice, and contains no record cites or authorities supporting any claim that he satisfied the required showing on those elements. He has therefore forfeited any argument that he made the requisite prima facie showing on the remaining two elements of his malicious prosecution claim. At oral argument, Lee contended Kim continued to prosecute claims lacking probable cause after the lease was provided. Specifically, counsel for Lee argued that, after the lease was provided but before Lee was dismissed, Kim prepared and filed a report in the Underlying Action in compliance with rule 26 of the Federal Rules of Civil Procedure in which Kim continued to contend Lee was individually liable. Even if we overlooked that this argument was not raised in Lee's briefing, neither the joint report itself nor any evidence regarding the date it was prepared or filed is part of the record on appeal. Accordingly, we cannot consider it. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)[9]

---

[9] In light of Lee's failure to make a prima facie showing he would probably prevail on the merits of his claim, we need not address Lee's argument that the trial court erred in overruling

19

**D. The Denial of Kim's Motion to Strike Grip Smart's Complaint Was Proper**

Kim makes the following claims of error with regard to the denial of his special motion to strike Grip Smart's malicious prosecution claim: (1) the trial court improperly shifted the burden to him to show probable cause for filing and maintaining the Underlying Action; (2) the trial court erred in ruling Grip Smart achieved a favorable termination on the merits; (3) Grip Smart failed to demonstrate Kim lacked probable cause; and (4) no evidence existed to support the trial court's finding that Kim pursued the Underlying Action with malice.

**1. *Burden of Proof***

Kim contends the court "misapplied the burden shifting provision" in section 425.16 by imposing upon *him* the obligation to establish probable cause for Grip Smart's malicious prosecution claim. Kim points to the following statement in the court's order as evidencing this alleged error: "It was not [Grip Smart's counsel's] obligation to prove a negative, it was Kim's obligation to establish probable cause to continue the law suit for which apparently none existed."

Kim has plucked this sentence from the court's order without context, and when the order is reviewed holistically it is

Lee's objections to the evidence Kim submitted in support of his special motion to strike. It was Lee, not Kim, that was required to make the prima facie showing on the second prong. Given Lee's failure of proof, any error with regard to consideration of evidence from the opposing party would not be prejudicial error because it would not lead to a more favorable result. (*People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887.)

20

plain there was no improper burden shifting. First, elsewhere in its order the trial court correctly stated "[t]he second prong of the anti-SLAPP analysis is to determine whether the plaintiff has shown a probability of succeeding on his claim. [Citation.] The plaintiff bears the burden, but need make only a prima facie showing, ' "akin to that of a party opposing a motion for summary judgment." ' " Second, in making the statement cited by Kim, the trial court was responding to Kim's argument that counsel for Grip Smart did not provide any evidence other than the lease (such as sworn statements or declarations) until the time of summary judgment. Read in context, the trial court's statement was responding to this argument from Kim about his conduct after having been presented with the lease, and Kim's obligation to have probable cause to continue prosecuting a lawsuit. We see no indication the court misunderstood who bore the burden on the second prong of the anti-SLAPP analysis.

### 2. *Favorable Termination on the Merits*

To meet its prima facie burden, Grip Smart was first required to show the Underlying Action terminated favorably in a manner that reflected on the merits of the claim. The action against Grip Smart terminated when the federal court granted Grip Smart's motion for summary judgment, finding Williams lacked standing under article III of the United States Constitution to pursue accessibility claims against Grip Smart. The federal court found the evidence undisputed "that neither Grip Smart nor its two shareholders have ever 'been owners or part owners of . . . the building in which [the Grip Smart] store is located, or the parking lot in front of [the] store.' [Citation.] In fact, for all the years that Grip Smart has been a tenant at the shopping center, 'the Landlord/Owner (Mr. Yong O. Hwang, who

21

has the company, Yongo America, Inc.) has always controlled exclusively the parking lots, sidewalks, driveways, and other areas used in common by the tenants in that shopping center.' [Citation.]" Because "the uncontroverted evidence demonstrates Grip Smart does not own or control the parking lot where Williams alleges she encountered barriers to her disability," the federal court found Williams's injury was not traceable to Grip Smart's actions and she therefore lacked article III standing to bring disability discrimination claims against Grip Smart.

Kim argued to the court below, as he does on appeal, that the federal court's ruling was a finding on jurisdictional grounds, and was therefore not on the merits. The trial court disagreed, noting "the summary judgment ruling makes clear that this was not a mere technical dismissal for lack of jurisdiction," and that "[r]eading the ruling as a whole, 'standing' was not the only problem and was used as [a] means to test causation and damages."

We agree with the trial court's analysis. While California law on standing generally asks only whether the plaintiff is the "real party in interest,"[10] standing in federal court involves different considerations. Specifically, to establish a case or controversy within the meaning of article III of the United States Constitution, a plaintiff "must establish a 'line of causation' between [a] defendant['s] action and [the plaintiff's] alleged harm

---

[10] See, e.g., *Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1001 [person invoking judicial process must have a real interest in the ultimate adjudication, having suffered or about to suffer " ' "[an] injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented" ' "].

that is more than 'attenuated.' " (*Maya v. Centex Corp.* (9th Cir. 2011) 658 F.3d 1060, 1070.) In ADA cases like the Underlying Action, this required Kim to demonstrate that his client suffered an injury-in-fact, that the injury was traceable to Grip Smart's actions, and that the injury can be redressed by a favorable decision. (*Chapman v. Pier 1 Imports (U.S.) Inc.* (9th Cir. 2011) 631 F.3d 939, 946.)

Kim cites federal authority noting that when a party lacks article III standing a court cannot reach the merits of the dispute (*Fleck and Associates v. Phoenix, City* (9th Cir. 2006) 471 F.3d 1100, 1106, fn. 4), such that a dismissal for lack of article III standing is not a disposition on the merits for purposes of things like claim preclusion (*Media Technologies Licensing, LLC v. Upper Deck* (Fed. Cir. 2003) 334 F.3d 1366, 1369-1370), or an award of prevailing party attorneys' fees under certain federal statutes. (*Molski v. Mandarin Touch Restaurant* (C.D. Cal., Dec. 9, 2005, No. CV04-0450 ER) 2005 WL 3719631 at *1.) These cases do not mean, however, that a dismissal for lack of article III standing can never be a favorable termination on the merits for purposes of a malicious prosecution claim. After all, voluntary dismissal precludes litigation on the ultimate merits in the same way as a dismissal for lack of article III standing and the law is well-established such voluntary dismissals can, in some circumstances, reflect on the substantive merits of the underlying claim. It is therefore not the type of dismissal, but the reasons for it, that must be examined to determine whether the dismissal reflects on the merits. (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 892-894.)

Here, the article III standing test necessarily required the federal court to assess the merits of the claims in the Underlying

Action, at least at the level necessary to determine if there was evidence the alleged injury was traceable to Grip Smart's actions. The federal court found the alleged injury was not traceable to Grip Smart's actions because it was undisputed Grip Smart did not own or control the parking lot where the alleged injury-in-fact occurred. Because the Underlying Action terminated based on the lack of any causal link between Grip Smart's actions and the alleged injury, the Underlying Action terminated in favor of Grip Smart in a manner that reflected on the merits of the claim.

### 3.    *Probable Cause*

Grip Smart was required next to show Kim lacked probable cause to bring and maintain the Underlying Action. "The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.) The resolution of that question requires an objective determination of the reasonableness of the underlying lawsuit based on the facts known to the party bringing the suit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) " 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.]" (*Soukup*, *supra*, at p. 292.) The test to be applied in evaluating the existence of probable cause is "whether any reasonable attorney would have thought the claim tenable." (*Sheldon Appel Co.*, *supra*, at p. 886.)

Probable cause may exist even where the underlying lawsuit lacks merit. (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 743, fn. 13.) " 'Counsel and their clients have a right to present issues that are arguably correct, even if it is

24

extremely unlikely that they will win . . . .' " (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 885.)  "Reasonable lawyers [also] 'can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless.' " (*Jarrow Formulas, Inc.*, *supra*, at p. 743, fn. 13.)  "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit.  [Citations.]" (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970.)

In making an initial assessment of tenability, an attorney is entitled to rely on the information provided by the client, unless the attorney is on notice of specific factual errors in the client's version of events that render the claim untenable.  (*Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 625-627, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7 and *Zamos v. Stroud*, *supra*, 32 Cal.4th at p. 973.)  Even when an attorney receives evidence that appears to present a complete defense, the attorney may act reasonably in going forward with the lawsuit if there is a possibility that the defense will, on further evidence or examination, "prove less than solid." (*Zamos*, *supra*, at p. 970, fn. 9.)  However, an attorney who has probable cause to commence a lawsuit may be liable for malicious prosecution if he or she continues to prosecute the action after learning it is not supported by probable cause.  (*Id*. at p. 973.)

Grip Smart does not contend that Kim lacked probable cause to initiate the action.  Instead, Grip Smart takes issue with Kim's continued prosecution of the Underlying Action after November 2016, when Grip Smart's counsel notified Kim "of the

proper names of the proper defendants, along with the actual terms identifying who controlled the parking lot where Williams'[s] alleged discrimination occurred."

Kim admits he received a copy of Grip Smart's lease on November 4, 2016, and does not dispute that the lease placed all responsibility for upkeep and maintenance of common areas— including the parking lot where Williams allegedly encountered a lack of accessible parking—on Yongo. Kim also acknowledges, by citing to them in his brief, that the Code of Federal Regulations provide that "[b]oth the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of [the ADA]. *As between the parties, allocation of responsibility for complying with the obligations of [the ADA] may be determined by lease or other contract.*" (28 C.F.R. § 36.201(b) (2016), italics added.)

Nonetheless, citing *Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827 (*Botosan*) as well as an earlier district court case (*Botosan v. Fitzhugh* (S.D.Cal. 1998) 13 F.Supp.2d 1047), Kim argues the terms of the lease had no bearing on the question of probable cause since "the allocation of responsibility between the landlord and a tenant by the lease is effective only '[a]s between the parties' and has no effect on the rights of third parties." In *Botosan*, a landlord argued it could not be held liable for ADA violations on leased property because responsibility for all ADA compliance had been shifted to its tenants vis-à-vis their leases. (*Botosan*, *supra*, at p. 832.) The Ninth Circuit examined the language and history of the ADA, and concluded the ADA imposes concurrent obligations on landlords and tenants, and that the landlord, as an owner of the property, should be liable

26

for ADA compliance even on property leased to, and controlled by, a tenant.  (*Id*. at pp. 832-834.)

The problem with Kim's reliance on *Botosan* is that it focuses on landlord responsibilities, and ignores a later Ninth Circuit opinion relieving tenants like Grip Smart from liability under the ADA in cases exactly like the present one.  In *Kohler v. Bed Bath & Beyond of California, LLC* (9th Cir. 2015) 780 F.3d 1260, the plaintiff, a paraplegic who required the use of a wheelchair, alleged he encountered architectural barriers both inside the defendant's store and in the parking lot of the shopping center in which the store was located.  (*Id*. at p. 1262.) The district court granted summary judgment in favor of the defendant, concluding the store "did not 'own, lease or operate' the shopping center parking lot, and therefore was not liable for any ADA barriers occurring there."  (*Ibid*.)  On appeal, the plaintiff argued the defendant's lease, which defined the parking lot as a " 'Common Area' " and further stated that the " 'Landlord shall operate, maintain, repair and replace the Common Areas . . . [and] shall comply with all applicable Legal Requirements,' was an attempt to contract away its ADA liability in violation of [the Ninth Circuit's] decision in [*Botosan*]."  (*Id*. at p. 1264.)

The appellate court characterized the plaintiff's reliance on *Botosan* as "misplaced . . . .  The ADA imposes compliance obligations on 'any person who owns, leases (or leases to), or operates a place of public accommodation.'  (42 U.S.C. § 12182(a).)  The existence of a lease that delegates control of parts of that property to a tenant has no effect on the landlord's preexisting obligation, because under the ADA, a party is prevented from doing anything 'through contractual, licensing, or other arrangements' that it is prevented from doing 'directly.'

[Citation.]  Here, in contrast, [the defendant store], like any tenant, has no preexisting control of a property.  Absent a lease, it lacks any legal relationship at all to the property.  That it takes control of a part of the property, subject to a lease, imposes ADA compliance obligations on it [only] for that part of the property it controls . . . ."  (*Kohler v. Bed Bath & Beyond of California, LLC*, *supra*, 780 F.3d at p. 1264.)  The Ninth Circuit expressed concern that the plaintiff's reading of *Botosan* would create the very situation in which Grip Smart found itself, and "would impose upon a single tenant—e.g., the cell phone kiosk operating in a shopping center's lobby—liability for ADA violations occurring at the far end of the shopping center's parking lot; such an outcome serves no purpose other than to magnify the potential targets for an ADA lawsuit."  (*Ibid.*)

While Kim's belief regarding Grip Smart's potential liability may have been tenable at the inception of the Underlying Action, Grip Smart introduced sufficient evidence for purposes of a special motion to strike that Kim's belief was no longer defensible in November 2016 after Kim was provided a copy of the operative lease.  Other than his inapposite citation to *Botosan*, Kim points to nothing else that would defeat Grip Smart's claim as a matter of law.  Grip Smart therefore made the requisite showing that continued prosecution after November 2016 was done without probable cause.  (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292; accord, *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 158-159 ["when a party is put on notice a fundamental element of its case is disputed, it should not proceed without evidence sufficient to support a favorable judgment on that element or at least

information affording an inference such evidence can be obtained"].)

### 4. *Malice*

Grip Smart was finally required to make a showing sufficient to support the element of malice.  (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 874.)  " 'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action.  [Citation.]  The motive of the defendant must have been something other than that of . . . the satisfaction in a civil action of some personal or financial purpose.  [Citation.]  The plaintiff must plead and prove actual ill will *or* some *improper* ulterior motive.'  [Citations.]  Malice 'may range anywhere from open hostility to indifference.  [Citations.]  Malice may also be inferred from the facts establishing lack of probable cause.'  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 292.)

"[M]alice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause."  (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226.)  The *Daniels* court concluded malice formed after the filing of a complaint is actionable.  " 'Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset.'  [Citation.]"  (*Ibid.*)

Kim contends the trial court made no finding regarding malice.  He appears to have overlooked the trial court's express finding that Kim had no probable cause to continue prosecuting the action, "and given the allegations by [Grip Smart] that when it confronted Kim with the facts [Grip Smart] was only

29

threatened with a further demand for money, the court can reach but on[e] conclusion, the matter was pursued with malice."

We agree that Grip Smart met its burden to show malice. In determining whether malice exists, we must accept as true the evidence favorable to the plaintiff. (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 348.) Further, a reviewing court may consider not only facts supported by direct evidence, but also facts reasonably inferable from the evidence. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 822.) The facts on which the trial court relied to find malice were sufficient to meet the showing required to defeat a special motion to strike.

### DISPOSITION

The order granting Kim's special motion to strike Lee's complaint in case No. B287923 is affirmed. The parties are to bear their own costs in that appeal.

The order denying Kim's special motion to strike Grip Smart's complaint in case No. B289837 is affirmed. Grip Smart is awarded its costs on appeal.


WEINGART, J.[*]


We concur:


ROTHSCHILD, P. J.          CHANEY, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TAE SEOG LEE, | B287923 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC673852) |
| v. | |
| JONG YUN KIM, | |
| Defendant and Respondent. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| | |
| GRIP SMART PRINTING, INC., | B289837 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC692010) |
| v. | |
| JONG YUN KIM, | |
| Defendant and Appellant. | |

THE COURT*:

Good cause appearing, it is ordered that the opinion in the above entitled matter, filed October 2, 2019, be published in the official reports.

_____    _____    _____
    \*ROTHSCHILD, P. J.        CHANEY, J.        WEINGART, J.\*\*

\*\* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.