[No. B207024. Second Dist., Div. Eight. Feb. 27, 2009.]

GENETHERA, INC., et al., Plaintiffs and Appellants, v.
TROY & GOULD PROFESSIONAL CORPORATION et al., Defendants
and Respondents.

902

**Counsel**

Mark Shoemaker for Plaintiffs and Appellants.

Troy & Gould, Jeffrey W. Kramer and Arvin Tseng for Defendants and Respondents.

**Opinion**

**FLIER, J.**—Appellants GeneThera, Inc., GTI Corporation Transfer Agents, LLC, Antonio Milici, and Tannya L. Irizarry appeal from an order granting a special motion to strike their complaint as a strategic lawsuit against public participation (SLAPP; see Code Civ. Proc., § 425.16 et seq.),[1] and from the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

subsequent entry of judgment for respondents.[2] Respondents are Attorney Jeffrey Rosenfeld and his law firm, Troy & Gould Professional Corporation (collectively TG), and their clients M.A.G. Capital, LLC, Mercator Momentum Fund, L.P., Mercator Momentum Fund III, L.P., and Monarch Pointe Fund, Ltd. (collectively MAG). Appellants assert the trial court erred in ruling that (1) respondents met the threshold requirement of showing appellants' action arose from protected activity, and (2) appellants had not shown a reasonable probability of success on the merits. We hold an attorney's communication of an offer of settlement to counsel for an opposing party is protected activity subject to the absolute litigation privilege, and the trial court properly ruled appellants' lawsuit is a SLAPP action. Because appellants did not show a likelihood of success, we therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Appellants, together with Laura Bryan (Bryan), were defendants in an action TG filed against them on behalf of MAG (MAG action).[3] The defendants were represented in the MAG action by Attorney Shoemaker. By agreement of counsel, MAG set Bryan's deposition to be taken in Los Angeles, California, on September 17, 2007. Bryan failed to appear for her deposition. Later the same day, TG sent a letter to Shoemaker extending an offer to settle the MAG action as to Bryan alone on favorable terms. MAG offered to dismiss with prejudice its case against Bryan for a nominal sum on condition that she agree to be telephonically deposed, to be available to MAG for consultation, and to provide truthful testimony at trial.[4]

---

[2] The present appeal raises the identical issue we decided in *Shoemaker v. Troy & Gould Professional Corp.* (Dec. 18, 2008, B207019) (nonpub. opn.) (*Shoemaker*), a related case brought by Mark Shoemaker, appellants' attorney, on his own behalf. In *Shoemaker*, we affirmed entry of judgment for respondents after the trial court granted a special motion to strike Shoemaker's complaint on allegations identical to those in the present action.

[3] MAG sought to enforce written agreements under which MAG had privately invested $1.1 million in the corporate defendant in exchange for preferred shares convertible to common stock. MAG alleged the corporate defendant stopped honoring MAG's conversion notices and ceased paying agreed dividends. MAG sought compensatory and punitive damages alleging defendants' actions had rendered the preferred stock "virtually worthless."

[4] Bryan was located outside of California, was an employee of the corporate defendant, and had been designated the person most knowledgeable about certain matters involving the corporation.

In the settlement letter, TG indicated to Shoemaker that Bryan's failure to appear for deposition gave MAG the right to seek sanctions against her, and MAG intended to hold her personally liable for any damages awarded in the underlying action. TG's letter stated MAG believed that Bryan had "information that will be useful" in the underlying action and MAG therefore was willing to settle with Bryan if she provided the information. TG's letter to Shoemaker further stated, "We recognize that this offer emphasizes the conflict of interest between your representation of Ms. Bryan and your representation of [other defendants]. Accordingly, we encourage Ms. Bryan to consult with independent counsel about this offer."

Appellants then filed the present action against respondents, alleging respondents' offer of settlement in the MAG action constituted an intentional interference with contractual relations and negligence. Appellants alleged the settlement offer to Bryan was designed effectively to raise a conflict of interest so that Shoemaker could not represent any party in the MAG action. Appellants asserted the MAG settlement offer was unethical and a violation of the Rules of Professional Conduct.[5]

Respondents filed a special motion to strike appellants' complaint as a SLAPP action, contending the settlement offer at issue arose from a protected activity and appellants were unable to demonstrate a probability they would prevail on their claim. (See § 425.16, subd. (b).)[6]

The trial court granted respondents' motion. The court expressly found appellants' complaint arose from respondents' protected activity of sending a settlement offer and appellants had not shown a reasonable probability of success on the merits.

The court entered a judgment dismissing the instant action with prejudice and awarded respondents their attorney fees and costs.

Appellants timely appealed the order granting respondents' motion and the resulting judgment.

## STANDARD OF REVIEW

We review a trial court's rulings on a special motion to strike under a de novo standard of review. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*); *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187].)

## DISCUSSION

In ruling on a special motion to strike a complaint, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of

---

[5] As noted in footnote 2, *ante*, Shoemaker brought a separate action against respondents containing allegations identical to the allegations herein.

[6] Respondents also contended appellants had failed to comply with Civil Code section 1714.10, which requires a plaintiff to obtain leave of court before filing any action charging an attorney with conspiring with his or her client.

the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The moving defendant has the burden on the first issue, the threshold issue; the opposing plaintiff has the burden on the second issue. (§ 425.16, subd. (b)(1); see *Equilon, supra,* at p. 67.)

■ We conclude upon analysis of the pleadings and supporting evidence that the trial court properly granted respondents' special motion to strike the complaint.

### 1. *Arising out of Protected Activity*

■ Section 425.16 defines an "act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as including any statement or writing made "in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subds. (b)(1), (e)(2).) Statements and writings made in connection with litigation are therefore covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 [64 Cal.Rptr.3d 348]; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

Appellants state the mere fact an action was filed after protected activity took place does not mean the action arose from that activity for purposes of the anti-SLAPP action statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) Indeed, our Supreme Court has stated that "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier,* at p. 89; see also *Cotati,* at pp. 76–78.)

■ Both of appellants' claims here are based on TG's communicating the settlement offer. In the first cause of action for intentional interference with contractual relations, appellants alleged that they had an attorney-client agreement with Shoemaker in the MAG action, of which respondents were

aware, and that "[t]he contents of [respondents'] settlement offer was intentionally designed to conflict Shoemaker to prevent him from representing [appellants] at the trial of [the MAG action]." Appellants' second cause of action for negligence incorporated all the prior allegations and asserted that TG had a general duty to act in accordance with the Rules of Professional Conduct, including the principle that an attorney "is not to knowingly assist in, solicit, or induce any violation of the Rules." Appellants alleged TG's conduct was "unethical," a "bad faith trial tactic," and "contrary to the public policy stated in Rule 1-100 to protect the public and to promote respect and confidence in the legal profession."[7] Both causes of action in appellants' complaint are based on TG's communication of an offer to settle the ongoing lawsuit, a matter connected with issues under consideration or review by a judicial body.[8] An attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike. (*Navellier, supra,* 29 Cal.4th at pp. 88–89.)

## 2. *Probability of Prevailing*

■ To satisfy the burden of showing the probability of prevailing on his or her claims (see § 425.16, subd. (b)(1)), a plaintiff must demonstrate that the complaint is both legally sufficient and, assuming his or her proffered evidence is believed, supported by facts sufficient to sustain a favorable judgment. (*Navellier, supra,* 29 Cal.4th at pp. 88–89.) In the present case, it is clear appellants cannot prevail on their claims because they are based on conduct subject to an absolute litigation privilege.

---

[7] Rule 1-100 of the State Bar Rules of Professional Conduct provides that the Board of Governors has the power to discipline members for a willful breach of the rules and that "[t]hese rules are not intended to create new civil causes of action." As such, the rule does not alone provide a basis for civil action.

[8] In their opening brief, appellants assert Rosenfeld also engaged in a "direct communication" with Bryan on September 19, 2007. In support of the special motion to strike, respondent Rosenfeld had proffered a declaration stating he was informed at Bryan's abortive deposition that Bryan was no longer employed by the defendants in the MAG action and that Shoemaker was not in contact with her. Rosenfeld stated he asked Shoemaker if he (Rosenfeld) could attempt to get into contact with Bryan. Shoemaker refused. Rosenfeld then sent Shoemaker the letter containing MAG's offer to settle with Bryan in exchange for her agreement to be deposed telephonically and testify truthfully. However, as Rosenfeld's declaration makes clear, it was Shoemaker's client Bryan who then communicated with Rosenfeld by e-mail after Shoemaker forwarded MAG's settlement offer to her. Bryan indicated she wished to accept MAG's offer. Rosenfeld stated he responded to Bryan's e-mail, but only to inform Bryan he could not communicate with her because she was represented by counsel, and he requested her to direct her correspondence to Shoemaker. There was no improper communication by Rosenfeld to Bryan and no evidence Rosenfeld deliberately disregarded the attorney-client relationship.

■ Civil Code section 47, subdivision (b) provides in relevant part that, with exceptions not applicable here, a privileged publication is one made "[i]n any . . . judicial proceeding . . . ." Section 47 was originally enacted with reference to defamation, but it has been held to have "broad application" to any communication and all torts other than malicious prosecution. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211–212 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*).) Its principal purpose "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Id.* at p. 213.) The litigation privilege also "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Id.* at p. 214.) The privilege is absolute, " 'not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions . . . .' [Citation.]" (*Ibid.*)

■ In *Rusheen, supra*, 37 Cal.4th at page 1057, our Supreme Court reiterated the general parameters of the litigation privilege, declaring that it " 'applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' " (*Ibid.*, quoting *Silberg, supra*, 50 Cal.3d at p. 212.) Therefore, under the litigation privilege, "communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 [17 Cal.Rptr.2d 828, 847 P.2d 1044] (*Rubin*).)

■ Appellants contend the communication in question must also have a "functional connection," i.e., "function as a necessary or useful step" in the litigation process, in order to qualify as protected. There is a strong public policy in favor of allowing publications in the course of judicial proceedings regardless of their perceived content. Indeed, our Supreme Court has observed that a communication need not itself be "accurate" or "truthful" for the privilege to attach but simply within the "category of communication permitted by law." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 959 [56 Cal.Rptr.3d 477, 154 P.3d 1003] (*Jacob B.*).) " 'To hold otherwise would be inconsistent with the general public purpose of the privilege to encourage the utmost freedom of access to the courts and quasi-judicial bodies.' " (*Ibid.*, quoting *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489 [104 Cal.Rptr. 650].) A

settlement letter directed to counsel falls within the category of communications to which the privilege attaches regardless of appellants' perception it is divisive and purportedly precipitates a conflict of interest. Our conclusion does not change even if the communications in question were, as appellants claim, substantively at variance with the Rules of Professional Conduct.[9] (See, e.g., *Jacob B., supra*, 40 Cal.4th at pp. 961–962 [litigation privilege trumps constitutionally based right of privacy]; *Rubin, supra*, 4 Cal.4th at pp. 1194–1195 [privilege upheld against claims of wrongful attorney solicitation].)

■    Appellants rely on *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1149 [57 Cal.Rptr.2d 284], a case which appellants cite for the proposition that "litigation in the press is not protected." We have no quarrel with *Rothman*; it just does not apply here. Indeed the *Rothman* opinion states that "the test is satisfied by demand letters and like communications between litigants or their attorneys which are directed toward settlement of a pending or anticipated lawsuit . . . ." (*Id.* at p. 1148.) The communications here in question similarly serve the functional requirement of "communications . . . directed toward settlement of a pending . . . lawsuit." (*Ibid.*)

Appellants therefore cannot meet their burden of demonstrating a probability of success on the merits of their claims.

3.   *Attorney Fees and Costs on Appeal*

■    Respondents contend they are entitled to recover their attorney fees and costs under section 425.16, subdivision (c) if this court affirms the judgment or dismisses appellants' appeal. Section 425.16, subdivision (c) provides that "[i]n any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." The statute includes fees and costs incurred in defending an unsuccessful appeal of an order granting a special motion to strike. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 20 [45 Cal.Rptr.3d 633]; *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448 [121 Cal.Rptr.2d 275].) The provision for fees and costs "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating [himself or itself] from a baseless lawsuit." (*Id.* at p. 446.) Accordingly, respondents are entitled to their attorney fees on appeal.

---

[9] As noted, we have concluded neither TG nor Rosenfeld violated the Rules of Professional Conduct in their communications.

## DISPOSITION

The judgment is affirmed. Respondents are to recover attorney fees and costs on appeal, and the matter is remanded to the trial court to determine appropriate fees and costs.

Rubin, Acting P. J., and Bigelow, J., concurred.