Filed 10/15/13  Catanzarite Law Corp. v. Gordon Reese CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| CATANZARITE LAW CORPORATION, | |
| Plaintiff and Appellant, | G047968 |
| v. | (Super. Ct. No. 30-2012-00578759) |
| GORDON REESE, LLP, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Affirmed in part, reversed in part.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Eric V. Anderton, for Plaintiff and Appellant.

Gordon & Rees, Douglas Smith and Michael P. Campbell, for Defendant and Respondent.

## INTRODUCTION

This is an appeal from an order granting an anti-SLAPP motion to respondent law firm, Gordon & Rees, LLP. Appellant Catanzarite Law Corporation sued Gordon & Rees, among others, for interference with contractual relations after former Catanzarite clients did not honor a contingency fee agreement. Gordon & Rees represented parties opposed to these former clients in a series of Los Angeles Superior Court lawsuits. Gordon & Rees's clients settled with Catanzarite's former clients, and, apparently, Catanzarite did not get paid.

Gordon & Rees moved to dismiss the lawsuit under the anti-SLAPP statute, Code of Civil Procedure section 425.16,[1] a motion the trial court granted. The court also awarded Gordon & Rees its attorney fees, pursuant to section 425.16, subdivision (c)(1).

We affirm the order granting the motion. The activity of which Catanzarite complains is clearly protected under the anti-SLAPP statute and privileged under Civil Code section 47. The attorney fee award, however, must be reversed. Gordon & Rees represented itself in the motion proceedings, and a self-represented party cannot recover attorney fees in this context.

## FACTS

In July 2011, Catanzarite substituted into five actions pending in Los Angeles Superior Court, representing a group of clients that included Ronald Weinstock. Catanzarite alleged it had a written fee agreement with these clients providing that the firm would be paid on contingency. Its compensation was to include membership interests in Newlife Sciences, LLC, at that point in the (allegedly wrongful) possession of

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

some of the adverse parties.[2]  Catanzarite also alleged it had a lien on any recovery in the five Weinstock actions.

The Weinstock actions included malpractice claims against two attorneys, John Markham and Elizabeth Read, and their law firm, Markham & Read.  Gordon & Rees represented the Markham/Read parties.

In February 2012, Catanzarite moved to withdraw from representing the Weinstock parties, and the trial court granted the motion.  Catanzarite alleged that a Gordon & Rees lawyer was told about the attorney lien at that time.  The Weinstock parties hired another law firm to represent them.

The Weinstock parties settled with Markham, Read, and their law firm in April 2012.  According to the complaint, Weinstock received money and membership interests in Newlife Sciences as consideration for settling.  The Weinstock parties then dismissed Markham, Read, and their law firm.

Catanzarite sued Gordon & Rees (among others) for interfering with its contract with the Weinstock parties and the recovery on the lien.  Gordon & Rees filed an anti-SLAPP motion, which the trial court granted, in addition awarding Gordon & Rees $3,842 in attorney fees.  The trial court dismissed Gordon & Rees from the interference action.

**DISCUSSION**

The California Legislature enacted the anti-SLAPP statute to counteract "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."

---

[2]  Catanzarite did not attach a copy of the fee agreement to its complaint and did not set out the relevant passages *in haec verba*.  (See 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 518, p. 650.)   The agreement was also not an exhibit to the opposition to respondent's anti-SLAPP motion.  Thus, it is not possible to tell what the agreement actually provided with respect to payment for legal services or whether the agreement was enforceable under Business and Professions Code section 6147.

(§ 425.16, subd. (a).)  The Legislature created a special motion to strike, filed at the outset of litigation, to nip these suits in the bud, before defendants incurred crippling attorney fees and other expenses.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.)  A court may order a cause of action "arising from any act . . . in furtherance of the . . . right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" to be stricken by means of this special motion.  (§ 425.16, subd. (b)(1).)  We review the order granting or denying an anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

The trial court uses a two-part test to evaluate an anti-SLAPP motion. First, the court determines whether the complaint or cause of action is "one arising from protected activity."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)  As our Supreme Court has emphasized, "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity."  (*Id*. at p. 89.) The court has also cautioned, "[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity."  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.)  A cause of action "arising from" protected activity "means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech."  (*Id.* at p. 78.)

The defendant bears the burden of showing that the cause of action arises from protected activity.  (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)  If the defendant makes that showing, the court then proceeds to the second part of the inquiry:  whether it is probable that the plaintiff will prevail on the claim.  The plaintiff need not prove its claim, but it must produce enough evidence to establish a prima facie case.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

4

# I. Protected Activity

The actions of which Catanzarite complains took place during and immediately after settlement negotiations in a set of ongoing lawsuits in Los Angeles Superior Court. Gordon & Rees was not a party to these proceedings. Instead, it represented one set of parties who were adverse to Catanzarite's former clients. Gordon & Rees's personal right to petition the courts for redress is therefore not at issue. Nevertheless, the anti-SLAPP statute covers attorneys who are being sued because of statements "'made in connection with an issue under consideration or review by a . . . judicial body' within the meaning of section 425.16, subdivision (e)(2).'" (*Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420; see also *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056 [section 425.16 applies to "qualifying acts committed by attorneys in representing clients in litigation"].) "[I]f the plaintiff is a nonclient who alleges causes of action against someone else's lawyer based on that lawyer's representation of other parties, the anti-SLAPP statute is applicable to bar such nonmeritorious claims." (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158.)

Catanzarite argues that the conduct at issue is paying the settlement proceeds to the Weinstock parties, which is not protected activity, rather than participating in the settlement negotiations. This argument will be dealt with in more detail below. Here we simply point out that Catanzarite presented no evidence that Gordon & Rees paid the Weinstock parties anything.[3] On the contrary, the only evidence on this issue was the declaration of a Gordon & Rees lawyer involved in the Weinstock litigation that the firm never possessed or controlled the consideration for the settlement

---

[3] Catanzarite asks us to "assum[e] true all of Appellant's allegations." We do not assume the allegations are true, as we would on demurrer. The plaintiff opposing an anti-SLAPP motion must present competent, admissible evidence; it may not rely solely on the allegations of the complaint. (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017.)

agreement. In short, Catanzarite presented no evidence that Gordon & Rees had any involvement in the settlement other than as attorneys representing one of the opposing sides.

Representing clients in settlement negotiations clearly qualifies as protected activity for anti-SLAPP purposes. (See, e.g., *Thayer v. Kabateck Brown Kellner LLP*, *supra*, 207 Cal.App.4th at p. 154 ["[L]egal advice and settlement made in connection with litigation are within section 425.16 . . ."]; *Dowling v. Zimmerman, supra,* 85 Cal.App.4th at p. 1420.) We conclude Gordon & Rees presented sufficient evidence to move the analysis to the second prong.

## II.        Probability of Prevailing

Catanzarite alleged a single cause of action for interference with contractual relations. The elements of a cause of action for interference with contractual relations are "'(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.)

Catanzarite misapprehends the conduct that would support a cause of action for interference with contractual relations. It argued below and argues here that the settlement negotiation itself was irrelevant; the wrongful act was paying money to the Weinstock parties and transferring to them membership interests in Newlife Sciences, from which Catanzarite evidently expected to be paid. But if the contract between Catanzarite and the Weinstock parties was breached, it was not breached when the latter

6

obtained the settlement proceeds; it was breached when they did not pay Catanzarite.[4]

What Catanzarite needed to establish probability of prevailing on an interference with contract claim was evidence to create a prima facie case that Gordon & Rees somehow convinced or persuaded the Weinstock parties (whom Gordon & Rees did not represent) not to pay Catanzarite pursuant to the fee agreement. Catanzarite presented no such evidence. As stated above, the evidence before the trial court regarding respondent law firm's involvement in the settlement established only that Gordon & Rees represented its clients in their negotiations with Catanzarite's former clients.

The trial court found in Gordon & Rees's favor on the second prong because any statements made during settlement negotiations were absolutely privileged under Civil Code section 47, subdivision (b)(2).[5] We agree. "'[T]he privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other

---

4  Catanzarite's barking up the wrong tree is exemplified by this statement from its opening brief: "[T]he cause of action arises not from the settlement agreement itself but from the fact that money was paid to Weinstock resulting in a breach of Appellant's lien contract with Weinstock." Catanzarite does not explain how paying money to Weinstock caused a breach of the fee agreement.

5  Civil Code section 47 provides in pertinent part: "A privileged publication is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding. . . ."

proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v.*

*Cohen, supra,* 37 Cal.4th at p. 1057.)  Settlement discussions in ongoing litigation qualify

for the absolute immunity of the privilege.  (See *Genethera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 909-910 [settlement letter directed to counsel privileged].)

We have found one case in which an attorney recovered for interference with contract when opposing counsel helped to persuade the attorney's client not to pay him:  *Skelly v. Richman* (1970) 10 Cal.App.3d 844.  The opinion does not mention the litigation privilege, perhaps because most of the machinations took place after the underlying case was over.  If *Skelly* stands for the proposition that an attorney can be sued for statements made during settlement discussions, we decline to follow it.  We do not believe its analysis survives subsequent California Supreme Court pronouncements concerning the scope of the litigation privilege.  (See, e.g., *Rusheen v. Cohen, supra,* 37 Cal.4th at pp. 1057-1058; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193; *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)


**III.        Attorney Fees**[6]

**S**ection 425.16, subdivision (c)(1), permits a defendant prevailing in an anti-SLAPP motion to recover attorney fees and costs.  Gordon & Rees, however, represented itself in the motion proceeding.  "[A] party, whether or not he is an attorney, who is not represented by counsel and who litigates an anti-SLAPP motion on his own behalf may not recover attorney fees under the statute."  (*Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 494; see also *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524.)  As Gordon & Rees litigated the motion on its own behalf, it was not entitled to a fee award.

---

[6]        Gordon & Rees has correctly argued that Catanzarite failed to raise this objection in the trial court. Whether Gordon & Rees is entitled to fees is a pure question of law, which we may address for the first time on appeal.  (See *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436.)

**DISPOSITION**

The portion of the order granting attorney fees is reversed.  In all other respects, the order is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.