Filed 4/29/26  Doe v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JANE DOES et al., | B343986 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 23STCV21284) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham, III, Judge. Affirmed.

Kellner Law Group, Richard L. Kellner; McNicholas & McNicholas, Matthew S. McNicholas and Douglas D. Winter for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, Michael Walsh, Deputy City Attorney, for Defendant and Respondent.

_____

Plaintiffs are current and former undercover Los Angeles Police Department (LAPD) officers. They brought these related actions against LAPD, the City of Los Angeles (City), Lizabeth Rhodes, Brian Taft, Michel Moore, Michael Feuer, and Hasmik Badalian Collins after the City produced photographs of undercover officers to Ben Camacho in order to settle his lawsuit pursuant to the California Public Records Act (CPRA; Gov. Code, § 7920.000 et seq.).

Plaintiffs appeal the trial court's order granting the City's special motion to strike all their claims under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16; undesignated statutory references are to this code.) We affirm.

## FACTUAL BACKGROUND

Because this appeal arises from an order granting an anti-SLAPP motion, we base this background upon " 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*), quoting § 425.16, subd. (b)(2).)

In October 2021, Camacho filed a CPRA request with LAPD for a roster and headshot photographs of all LAPD officers. In January 2022, LAPD agreed to provide only the roster in response, taking the position the photographs were exempt from disclosure pursuant to Government Code former section 6255. In May 2022, Camacho filed a petition for writ of mandate against the City to compel production of the photographs. (*Ben Camacho v. City of Los Angeles* (Super Ct. Los Angeles County, No. 22STCP02029).)

Camacho and the City ultimately reached an agreement to settle the writ proceeding in September 2022. The City agreed to produce photographs of "active-duty officers as of July 2022, except for active-duty undercover officers." However, the City actually produced to Camacho "a flash drive with headshots of all active-duty police officers as of July 3, 2022, except for a small group of specific officers who had an undercover assignment with a 650 designation." According to an exhibit attached to one of Plaintiffs' operative complaints, the City's production of photographs of officers working in an undercover capacity was "inadvertent[]." One of Plaintiffs' operative complaints alleges the production was "reckless[]."

In the letter accompanying the document production, the City stated the "production fulfills the CPRA request at issue in the writ," and "all that remains after your client's review of the production is the issue of Attorney's fees and a full settlement of the action."

In November 2022, Camacho and the City "entered into a settlement agreement regarding the attorneys' fees to be paid to Camacho," which noted the City "acted in good faith . . . to produce available, responsive, non-exempt records."

The following month, Stop LAPD Spying Coalition (SLSC) filed a CPRA request for a roster of current LAPD officers with each officer's "name, serial number, ethnicity, gender, area, rank, year of hire, weight, and height." The City provided some of the requested information in January 2023, but not the officers' heights and weights.

On March 16, 2023, the police officers' union, the Los Angeles Police Protective League, learned from a reporter that officer photographs, names, and serial numbers would be posted

to a publicly available website the next day. On March 17, 2023, SLSC launched a website with a searchable database allowing users to search for any LAPD officer, including undercover officers, by either the name or serial number. A query returned the officer's photograph, e-mail, ethnicity, gender, division, rank, year of hire, and salary information. The following day, the LAPD Chief Moore e-mailed an apology to all LAPD personnel, acknowledging "appropriate safeguards were not put in place" to protect officers "assigned to sensitive investigations," and promising an investigation of the information release.

In March and April 2023, the City demanded Camacho and SLSC return the wrongly produced photographs. When Camacho and SLSC did not do so, the City filed suit against them in April 2023 (No. 23STCP01060) to recover the photographs. According to the City, the suit settled without the photographs' return.

## PROCEDURAL HISTORY

Two hundred current and former undercover officers filed suit as Jane Does and John Does on September 5, 2023, against the City and other defendants, arising from the disclosure of their information and photographs (No. 23STCV21284). A similar complaint was filed on behalf of 703 John Doe plaintiffs on September 12, 2023 (No. 23STCV21995). The trial court ordered the cases related in October 2023.[1]

According to Plaintiffs, their operative "complaints allege causes of action for negligence, invasion of privacy, public disclosure of private facts, negligent infliction of emotional

---

[1]     A third similar complaint was filed by approximately six Doe plaintiffs on December 1, 2023, (No. 23STCV29551), and was related to the two existing actions. That third action is not before us in this appeal.

4

distress, breach of contract, and legal malpractice."[2] The City was a defendant in both actions, along with various LAPD officials and individuals from the City Attorney's Office.[3]

In January 2024, the City and other defendants filed an anti-SLAPP motion. They argued all of Plaintiffs' claims arose from their protected litigation activity in settling the Camacho lawsuit, and Plaintiffs could not show a likelihood of success on any one. The motion argued most causes of action were barred by the litigation privilege, and Plaintiffs could not bring a legal malpractice cause of action because they had no attorney-client relationship with any defendant. Plaintiffs argued because the City produced photographs it had not intended to include, the production was not protected activity, the litigation privilege did not bar Plaintiffs' claims, and the legal malpractice cause of action was valid because of the City Attorney's Office's past conduct. The trial court requested supplemental briefing from the parties regarding "whether the [Plaintiffs] have a private right of action under Penal Code section 832.7."

The trial court ultimately granted defendants' anti-SLAPP motion. It determined defendants had carried their burden to show Plaintiffs' claims arose from their protected activity, as

---

[2] The first amended complaint in No. 23STCV21284 included two additional causes of action. Because Plaintiffs do not mention those causes of action in this appeal, we do not consider them further. (See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 (*Pfeifer*).)

[3] Because Plaintiffs' opening brief appeals only the order granting the City's anti-SLAPP motion, we need not and do not consider the order as it relates to other defendants. (See *Pfeifer*, *supra*, 211 Cal.App.4th at p. 1282.)

5

required by the first part of the anti-SLAPP statute. The court further determined Plaintiffs had not shown a likelihood of prevailing on their claims. The litigation privilege of Civil Code section 47, subdivision (b) barred Plaintiffs' causes of action for negligence, invasion of privacy, public disclosure of private facts, negligent infliction of emotional distress, and breach of contract. Their legal malpractice cause of action also failed because Plaintiffs had not shown a direct or implied attorney-client relationship with any defendant. Finally, the court determined the Plaintiffs had no private right of action for damages under Penal Code section 832.7.

Plaintiffs timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(A), (e); see also §§ 425.16, subd. (i), 904.1, subd. (a)(13).)

## DISCUSSION

## I.  Overview of Anti-SLAPP Principles

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) The anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); see also § 425.16, subd. (b)(1).) A court's analysis of an anti-SLAPP motion proceeds in two steps. (*Baral*, at p. 384.)

"First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral*, *supra*, 1 Cal.5th at p. 384.)

Second, if the defendant succeeds, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384; see also

6

*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) The court undertakes "a 'summary-judgment-like procedure' " in which "[i]ts inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, at pp. 384–385.) " '[W]e neither "weigh credibility, [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) Any " 'conflicts and inferences in the record [are resolved] in favor of plaintiff,' " but "speculative inferences . . . need not be considered." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795.)

## II. Plaintiffs' Claims Arose from the City's Protected Activity

It is the defendant's burden to make "a threshold showing that the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) In order to do so, the City must "show[] that the acts underlying the plaintiff's cause of action fall within one of the four categories of conduct described in section 425.16, subdivision (e)." (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1036.)

### A. The City Produced the Photographs in Connection with Litigation

The trial court concluded the City released the photographs in connection with settling the Camacho writ, and thus it "qualifie[d] as 'protected activity' under [the] anti-SLAPP

7

statute." Plaintiffs' opening brief does not challenge that their causes of action arise from the City's production of their photographs in connection with litigation. We agree the production was protected under section 425.16, subdivision (e)(2).

" '[A] statement is "in connection with" litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.' " (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 962 (*Seltzer*).) "Statements and writings made in connection with litigation are therefore covered by the anti-SLAPP statute," regardless of whether "the litigated matter concerns a matter of public interest." (*GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 907 (*GeneThera*).) It is well established that statements made in connection with litigation settlements are protected activity. (See *id.* at pp. 907–908 [communication of settlement offer]; *Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 86, 90 [negotiation and execution of release of claims]; *Seltzer*, at pp. 963, 969 [settlement negotiations].)

Here, the photographs relate to the substantive issues in the Camacho litigation because Camacho's writ petition sought to compel the City to provide him with the photographs he had requested of all LAPD officers. The photographs were produced to Camacho, a party, as part of the settlement of that litigation. The City's activity in producing the photographs is therefore protected by the anti-SLAPP statute. (See § 425.16, subd. (e)(2).)

## B. There Is No Conclusive Evidence the City's Conduct Was Illegal

Nevertheless, Plaintiffs argue the City is not entitled to the protection of the anti-SLAPP statute because its production of the

photographs was illegal. According to Plaintiffs, "the City intentionally did not redact photographs of officers who were undercover prior to July 2022," and thus, the City willfully violated Penal Code section 832.7, subdivision (b)(6)(D), which they say amounts to a criminal misdemeanor under Government Code section 1222. The anti-SLAPP law does not apply "where either the defendant concedes the illegality of [his] conduct or the illegality is conclusively shown by the evidence." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 316 (*Flatley*).) But that narrow exception does not apply here because the City has not conceded it engaged in any illegal activity, and Plaintiffs have presented no conclusive evidence to the contrary.

First, the operative complaints do not allege the City engaged in criminal conduct. (Cf. *Soukup*, *supra*, 39 Cal.4th at p. 285 [the defendant's conduct was "alleged to have been illegal"].) Second, the evidence Plaintiffs rely upon to demonstrate illegality—a letter accompanying the photograph production—does not expressly mention police officers who worked in an undercover capacity prior to July 2022, let alone conclusively establish the City intentionally produced their photographs. Third, the City has maintained it "inadvertently produced . . . images of officers working in an undercover capacity." For that matter, even Plaintiffs' opening brief on appeal repeatedly characterizes the City's production as "negligent." That distinguishes this case from *Towner*, where the defendants did not dispute they willfully violated Penal Code section 832.7. (*Towner v. County of Ventura* (2021) 63 Cal.App.5th 761, 772–773.) Accordingly, to the extent the City's "intent is a disputed factual issue" (*Seltzer*, *supra*, 182 Cal.App.4th at p. 965), that issue "cannot be resolved within

the first step [of an anti-SLAPP motion,] but must be raised . . . in connection with the plaintiff's burden to show a probability of prevailing on the merits" (*Flatley*, *supra*, 39 Cal.4th at p. 316).

Plaintiffs have not "conclusively establishe[d]" the City's production of the photographs "was illegal as a matter of law." (*Flatley*, *supra*, 39 Cal.4th at p. 320; see also *Seltzer*, *supra*, 182 Cal.App.4th at pp. 964–967 [factual disputes precluded a showing of illegality].) We therefore agree with the trial court the City carried its burden to show Plaintiffs' claims arose from their activity protected by the anti-SLAPP statute.

## III. Most of Plaintiffs' Causes of Action Are Barred by the Litigation Privilege

Because the City prevailed on the first step of the anti-SLAPP test, the burden shifted to Plaintiffs to demonstrate their causes of action had minimal merit. (See *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at pp. 819–820.) That typically requires a plaintiff to make a sufficient prima facie showing of each required element for each cause of action. (See *Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 964–965 ["the absence of a necessary element" causes the plaintiff's claim to fail as a matter of law].)

Here, however, we need not engage in that analysis for most of Plaintiffs' causes of action because they are absolutely barred by the litigation privilege of Civil Code section 47. (See *Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1290 [" 'A plaintiff cannot show a probability of prevailing on the merits . . . where the cause of action is barred by the litigation privilege.' "].)

### A. The Litigation Privilege Applies to the City's Production of Photographs

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action*).) Its " 'principal purpose . . . is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Ibid.*; see also *id.* at pp. 1247–1248 [the privilege is " ' "the backbone to an effective and smoothly operating judicial system" ' "].)

"The privilege is absolute in nature, applying 'to all publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that [it] applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action*, *supra*, 41 Cal.4th at p. 1241, italics omitted.)

Plaintiffs do not expressly dispute the litigation privilege applies to the City's photograph production. We agree. The City, a defendant in the Camacho litigation, produced the photographs to settle Camacho's writ. It is well established that settlement communications are "within the category of communications to which the privilege attaches." (*GeneThera*, *supra*, 171 Cal.App.4th at p. 910.)

11

## B. The Litigation Privilege Bars Most of Plaintiffs' Causes of Action

In light of the broad purposes and absolute nature of the litigation privilege, it bars a wide variety of tort causes of action. (*Action*, *supra*, 41 Cal.4th at pp. 1241–1242.) As long ago as 1990, our Supreme Court recognized the litigation privilege absolutely "immunize[s] defendants from tort liability based on" various theories, including "invasion of privacy," and "negligence." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 (*Silberg*); see also *Action*, at pp. 1241–1242, quoting *Silberg*, at pp. 213, 215.)

Plaintiffs' operative complaints plead causes of action for negligence, invasion of privacy, public disclosure of private facts, negligent infliction of emotional distress, breach of contract (third party beneficiary), and legal malpractice.[4] The trial court determined all but legal malpractice were barred by the litigation privilege. The Plaintiffs have not demonstrated that was error.

### 1. Invasion of Privacy and Public Disclosure of Private Facts

Each of Plaintiffs' operative complaints contain two privacy causes of action: one labeled "invasion of privacy" and one labeled "public disclosure of private facts." An invasion of privacy cause

---

[4] Although the trial court determined Plaintiffs had no private right of action under Penal Code section 832.7, we need not and do not reach that issue. Plaintiffs did not plead a standalone cause of action for violation of section 832.7. We will not redraft their complaint to plead " 'a claim that has not in fact been specifically alleged, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it.' " (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 883, italics omitted.)

of action can be based upon common law, statute, or the California Constitution. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 24–27 (*Hill*) [common law torts, including "public disclosure of private facts"]; *id.* at pp. 39–40 [constitutional right to privacy]; see, e.g., *Ribas v. Clark* (1985) 38 Cal.3d 355, 365 (*Ribas*) [statutory cause of action under Pen. Code, § 637.2]; *Alim v. Superior Court* (1986) 185 Cal.App.3d 144, 149–150 [statutory cause of action under Civ. Code, § 1798.53].) Regardless of the label, both Plaintiffs' privacy causes of action are plainly barred by the litigation privilege under binding Supreme Court precedent.

Our Supreme Court has already held "the [litigation] privilege protects against *all tort causes of action* except for malicious prosecution, *including those alleging invasion of privacy.*" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952, italics added (*Jacob B.*); see also *Silberg, supra,* 50 Cal.3d at p. 215.) It squarely "bars a privacy cause of action whether labeled as based on common law, statute, or Constitution." (*Jacob B.*, at p. 962; see also *Ribas, supra,* 38 Cal.3d at pp. 364–365 [privilege bars common law and statutory invasion of privacy].)

In *Jacob B.*, the Supreme Court considered "whether [courts] should distinguish between" the application of the litigation privilege bar to invasion of privacy claims based on "common law and [statute]," and its application to "a claim based on the state Constitution." (*Jacob B., supra,* 40 Cal.4th at p. 960.) It "conclude[d] . . . that the litigation privilege applies . . . to a constitutionally based privacy cause of action," in part because when voters enacted the constitutional provision, they were "mindful of the preexisting litigation privilege" and did not intend

13

to override it. (*Id.* at p. 961.) The court refused to engage in its own "balancing of the litigation privilege and the constitutional right of privacy on a case-by-case basis," because "[i]n adopting the litigation privilege, the *Legislature* has already done the balancing." (*Id.* at p. 962.) " '[T]he vital public policy' " furthered by the privilege "exists . . . not on a case-by-case basis[,] but in all cases." (*Ibid.*) For that reason, we follow the Supreme Court's repeated admonitions and conclude the litigation privilege bars Plaintiffs' invasion of privacy and public disclosure of private facts causes of action. (See *ibid.*)

In their reply brief, Plaintiffs argue *Jacob B.* is irrelevant because it analyzed article I, section 1 of the California Constitution, while their invasion of privacy cause of action depends upon article I, section 3, subdivision (b)(3). We disagree. "[A]rticle I, section 1 of the California Constitution creates a right of action" for invasion of privacy. (*Hill, supra,* 7 Cal.4th at p. 20.) Section 3 gives the public "the right of access to information" (Cal. Const., art. I, § 3, subd. (b)(1)), but does not "supersede[] or modif[y] the right of privacy guaranteed by Section 1 or affect[] the construction of any statute . . . or other authority to the extent that it protects that right to privacy" (*id.,* subd. (b)(3)). Nothing in section 3 suggests it confers any additional privacy rights that could be vindicated through an independent invasion of privacy cause of action.

Plaintiffs also argue *Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66, "severely undermines" the relevance of *Jacob B.* We disagree. *Long Beach* says nothing about the litigation privilege at all, let alone demonstrates the privilege does not bar privacy causes of action. That case considered whether a city had to disclose the names of

14

officers involved in a fatal shooting in response to a CPRA request or could withhold them pursuant to confidentiality statutes such as Penal Code sections 832.7, subdivision (a) and 832.8, subdivision (d). (*Long Beach*, at p. 71.) We are not concerned here with whether Plaintiffs could make a sufficient showing of the elements of an invasion of privacy cause of action or whether the City's disclosure of the photographs violated statutes like section 832.7. Instead, we are deciding if the absolute litigation privilege bars Plaintiffs' invasion of privacy cause of action as a matter of law.

In that regard, the absolute nature of the litigation privilege protects the City's photograph production, "even if we assume[d]" the production violated confidentiality laws. (*Jacob B.*, *supra*, 40 Cal.4th at p. 958.) Because the City's production of photographs to settle the Camacho writ "is a category of communication permitted by law," it is privileged, notwithstanding this "specific communication might not be permitted by law because . . . it was . . . meant to be kept confidential." (*Id.* at p. 959.)

The litigation privilege thus bars Plaintiffs' causes of action for invasion of privacy and public disclosure of private facts.

Plaintiffs ask us to recognize an exception to the litigation privilege for causes of action premised upon Penal Code section 832.7. We decline their invitation. Some Courts of Appeal have determined the litigation "privilege does not apply to causes of action based on violations" of certain statutes, like the California Rosenthal Fair Debt Collection Act and the Federal Fair Debt Collection Act (*People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1275) on the ground those statutes were " 'more specific' than the privilege, and . . . would be 'significantly or wholly

inoperable' if the privilege applied." (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 339 (*Komarova*)). But in those cases, it was unsettled whether the litigation privilege barred the claims at issue. (*Id.* at p. 337 ["The issue has not yet been discussed in any reported California state court case . . . ."]; see also *Persolve,* at pp. 1275–1276 [Federal Act claim not barred].)

By contrast, the Supreme Court has clearly and repeatedly held the litigation privilege absolutely "bars a privacy cause of action whether labeled as based on common law, statute, or the Constitution." (*Jacob B*, *supra*, 40 Cal.4th at p. 962.) We will not disregard that clear directive. (See *Rittiman v. Public Utilities Com.* (2022) 80 Cal.App.5th 1018, 1033 ["We . . . are bound to follow Supreme Court precedent."].) In fact, the *Komarova* court itself analyzed the litigation privilege bar differently for the two causes of action before it: a novel cause of action and an intentional infliction of emotional distress tort. (*Komarova*, *supra*, 175 Cal.App.4th at pp. 337, 341.) Despite concluding an exception was warranted for the former, it readily acknowledged the latter was barred because "[i]t is well settled that the litigation privilege bars causes of action for intentional infliction of emotional distress." (*Id.* at p. 341.) Because we do not write upon a blank slate in this area, we conclude the litigation privilege bars Plaintiffs' privacy causes of action under well-established law.

### 2. Negligence and Negligent Infliction of Emotional Distress

We further agree with the trial court the litigation privilege bars Plaintiffs' negligence and negligent infliction of emotional distress causes of action. First, "there is no independent tort of

16

negligent infliction of emotional distress"–"[t]he tort is negligence." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.) And second, as we discussed above, the litigation privilege categorically bars tort causes of action for negligence. (*Silberg*, *supra*, 50 Cal.3d at p. 215.) Plaintiffs do not separately address these causes of action or argue they can establish a probability of success on the merits. (See *Baral*, *supra*, 1 Cal.5th at p. 384.)

### 3. Breach of Contract (Third Party Beneficiary)

Plaintiffs also do not separately address their breach of contract cause of action, nor argue the litigation privilege applies any differently to that cause of action than to those discussed above. Indeed, Plaintiffs do not argue the trial court erred in determining the litigation privilege barred the breach of contract cause of action, separate and apart from the privacy causes of action. (Cf. *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 773–774 [examining application of litigation privilege to contract claims].) Thus, they have forfeited any challenge to the trial court's conclusion. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408 (*Bryant*) [argument "is forfeited by the failure to raise it in the opening brief"]; see also *Pfeifer*, *supra*, 211 Cal.App.4th at p. 1282.)

Even assuming the litigation privilege did not bar this cause of action, reversal is not warranted. Plaintiffs have barely mentioned breach of contract on appeal, let alone described its elements or argued they can show a probability of success to carry their burden at the second anti-SLAPP step. (See *Baral*, *supra*, 1 Cal.5th at pp. 384–385.)

## IV. Plaintiffs Have Not Shown Their Legal Malpractice Cause of Action Had Minimal Merit

The trial court concluded the Plaintiffs had not shown a probability of success on their legal malpractice cause of action because "[n]one of the [d]efendants had a direct or an implied attorney-client relationship" with Plaintiffs. We agree Plaintiffs fail to show that cause of action had minimal merit.

### A. The Anti-SLAPP Statute Applies

Plaintiffs conclusorily assert legal malpractice claims are not generally subject to anti-SLAPP motions, but they do not explain why this specific cause of action does not arise from protected activity. As discussed in part II.A., *ante*, Plaintiffs have not challenged the trial court's conclusion the City carried its burden to show the anti-SLAPP law applied. Their vague assertion, untethered to any argument specific to this malpractice cause of action, is insufficient to challenge the court's conclusion the anti-SLAPP statute applies. In any event, we readily conclude "the principal thrust of the conduct underlying" Plaintiffs' legal malpractice cause of action is the City's protected activity: the settlement of the Camacho writ and the documents produced therewith. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732.)

### B. Plaintiffs Have Not Shown the City Owed Them a Duty

The existence of a duty by the defendant to the plaintiff is an essential element of a legal malpractice claim. (*Gordon v. Ervin Cohen & Jessup LLP* (2023) 88 Cal.App.5th 543, 554 (*Gordon*).) Without that, "plaintiffs cannot establish . . . their malpractice cause of action" (*ibid.*) and cannot show the requisite

18

probability of success (*Baral*, *supra*, 1 Cal.5th at pp. 384–385). Plaintiffs have not shown they were owed a duty here.

### 1. Plaintiffs Were Not Clients

"A lawyer has a 'duty . . . to use such skill, prudence, and diligence as members of [the legal] profession commonly possess and exercise' when representing a client. [Citation.] A client may accordingly sue the lawyer for legal malpractice if the lawyer breaches that duty, that breach proximately injures the client, and the client suffers actual loss or damage." (*Gordon*, *supra*, 88 Cal.App.5th at p. 554.) The operative complaints allege the City Attorney's Office "represented Plaintiffs . . . when it negotiated" the Camacho settlement.

But on appeal, Plaintiffs do not argue they were clients of the City or the other defendants. Plaintiffs have thus forfeited any argument the City owed them a duty based upon a purported lawyer-client relationship. (See *Bryant*, *supra*, 60 Cal.4th at p. 408; see also *Pfeifer*, *supra*, 211 Cal.App.4th at p. 1282.)

### 2. Plaintiffs Were Not Intended Third Party Beneficiaries

Apart from the duty to clients, "a lawyer can sometimes owe a duty to third parties who are the intended beneficiaries of the lawyer's legal work for the client, such as when the lawyer is retained by the client to draft a will, a testamentary trust, or an inter vivos trust or gift." (*Gordon*, *supra*, 88 Cal.App.5th at p. 554, italics omitted; see also *Lucas v. Hamm* (1961) 56 Cal.2d 583, 590–591 (*Lucas*).) "A lawyer has a duty to a nonclient third party only if the client's intent to benefit that third party (in the way the third party asserts in their malpractice claim) is 'clear,' 'certain' and 'undisputed.' " (*Gordon*, at p. 556.) The plaintiff must "establish[] that the client, in a clear, certain and

19

undisputed manner, told the lawyer, 'Do *X*' (where *X* benefits the plaintiff)." (*Ibid.*)

In *Lucas*, the court held "intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations . . . may recover as third-party beneficiaries." (*Lucas*, *supra*, 56 Cal.2d at p. 591.) The court cited six factors to be considered in determining whether a defendant attorney should be held liable to a person not in privity: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, . . . the policy of preventing harm" (*id.* at p. 588), and whether imposition of liability "would impose an undue burden on the profession" (*id.* at p. 589).

The parties have not cited, and we have not located, any cases outside of the trusts and estates context in which third parties not in privity with an attorney were permitted to pursue a malpractice claim. Even in that context, courts have refused to find attorneys liable to unnamed potential beneficiaries on the ground that "extension of liability would 'impose an undue burden on the profession.' " (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 84 (*Chang*).)

In *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1262–1263 (*Goldberg*), individuals who had been granted legacies in a will sued an attorney who had settled a lawsuit brought against the client's estate that affected whether there would be enough money to pay the legacies.

Rejecting their claim, the *Goldberg* court found nothing to indicate the third parties were anything more than incidental

beneficiaries. "Innumerable instances in modern practice are encountered in which services performed by an attorney will benefit others besides his client. The enforcement of contractual rights by a contractor will benefit the contractor's employees. Successful labor litigation on behalf of a union will benefit the union members. Responsible representation of a city, county or other governmental unit will improve the lot of its citizens and employees. In each of these instances the fortunes of third parties are affected by the performance of an attorney retained by a client not a member of the benefited group. The fact that third parties are thus benefited, or damaged, by the attorney's performance does not give rise to a duty by the attorney to such third parties." (*Goldberg, supra,* 217 Cal.App.3d at p. 1268; see also *Chang, supra,* 172 Cal.App.4th at p. 82 [distinguishing intended beneficiaries from potential beneficiaries].)

Plaintiffs have not adequately shown the City intended to benefit them in the settlement agreement. The evidence Plaintiffs rely upon does not show in a "clear, certain and undisputed manner" they were intended beneficiaries of the settlement agreement. (*Gordon, supra,* 88 Cal.App.5th at p. 556.) A letter accompanying the production of photographs stated counsel for the parties agreed "images of officers working in an undercover capacity as of the time the pictures were downloaded (end of July 2022) are not included." We question if this letter even amounts to a contract. (See Civ. Code, §§ 1550 [defining contract], 1559 [defining third party beneficiaries].)

But in any event, the letter reveals no intent on the part of the City to benefit Plaintiffs. Rather, it states the "production fulfills the CPRA request at issue in the writ," and "all that remains after your client's review of the production is the issue of

Attorney's fees and a full settlement of the action." That suggests the intent was to settle the Camacho writ; it does not show the City intended to benefit any third parties, let alone Plaintiffs. Standing alone, the letter is not "clear, certain[, or] undisputed evidence of the [City's] intent to benefit [Plaintiffs] in the way they are seeking to vindicate." (*Gordon*, *supra*, 88 Cal.App.5th at p. 557; see also *id.* at pp. 557–558 [examples of clear client intent]; *Chang*, *supra*, 172 Cal.App.4th at p. 82 [no duty of care by lawyer "where there is a question about whether the third party beneficiary was, in fact, the decedent's intended beneficiary"].)

Because Plaintiffs have not shown the City clearly intended to benefit them via the settlement agreement, they did not sufficiently show they were owed a duty pursuant to that agreement. (See *Gordon*, *supra*, 88 Cal.App.5th at p. 560.) Thus, they did not show their legal malpractice cause of action has minimal merit. (See *id.* at p. 554; see also *Baral*, *supra*, 1 Cal.5th at pp. 384–385.)

## DISPOSITION

The judgment is affirmed. The City is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)

RICHARDSON, J.

WE CONCUR:

CHAVEZ, Acting P. J.    GOORVITCH, J.*

---

*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22